(No. 27999.—

Francis B. Murphy, Director of Labor, Appellee, *vs.* Harry G. Daumit, doing business as The Kirby Company, Appellant.

*Opinion filed September 19, 1944.*

CLOYES & CAVENDER, of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

The appellant, Harry G. Daumit, appeals from a judgment in favor of the Director of Labor against him for the sum of $1692.35, together with costs of suit, entered

on January 17, 1944, affirming the decision of the Director upon a proceeding under the Unemployment Compensation Act and quashing the writ of *certiorari*.

The appellant, formerly doing business as The Kirby Company, during the greater part of the year 1941, and prior thereto, was Chicago distributor for Kirby vacuum cleaners manufactured by Scott and Fetzer Company of Cleveland, Ohio. Appellant purchased the vacuum cleaners direct from the manufacturer and maintained a small stock room in his office. Cleaners were handled by the appellant by means of sales representatives who solicited from house to house and who were by the appellant called "dealers." Daumit reported and paid compensation for certain employees, called supervisors, inspectors, collectors, service men, stenographic and clerical help, to whom he paid salaries and whom he admitted were employees. Appellant contends, however, that the entire body of sales representatives were not in his employment but were independent brokers or jobbers. The so-called dealers consisted mostly of former salesmen for others in the home-appliance field, many of whom were secured through newspaper ads.

Each man engaged by the appellant was given several days of personal training, coaching and instruction in how to handle sales, credit arrangements and authorized statements to make concerning the cleaner. Appellant testified that each man was engaged upon what he called a verbal franchise agreement and that upon entering their endeavor one machine was turned over to each man who in turn signed a document referred to as a "receipt," "assignment," "affidavit" and "contract," as follows: "Received of The Kirby Company (———— Branch) the above Kirby convertible cleaner complete, purchased by me in accordance with the terms of my dealer's franchise or agreement, to be held by me until resold, subject to the lien of The Kirby Company therein set forth. [Signature.]" No money was paid

over by the so-called dealer to the Kirby Company at this time. Daumit also testified that no territory was designated or assigned to a dealer other than that the sales had to be within the limits of the city of Chicago. The list price of each vacuum cleaner was $89.50, set by the manufacturer.

Appellant testified no hours of employment were specified; no leads were given, no expenses paid to the individual men, no salaries were provided for; that in making the sale the dealer could make a trade-in allowance for an old machine, which machine became his to do with as he saw fit; that the profit to the dealer on a sale was $25 less the allowance for the trade-in; that no business was accomplished out of the office; that the office made no direct sales to the customers; that if someone called to buy a cleaner, one of his collectors was given the sale, upon which appellant took all of the profit; that some of the dealers received mail at the office, whereas witness Samuel Fields testified a separate mailbox was had for each of the salesmen; that, about once or twice a week, sales meetings were had at the office, where sales problems were discussed, but that attendance was not compulsory.

Most of the sales were made under written time-payment agreements, upon which a down payment was made by the customer. These time-payment contracts were considered by appellant as his property and after being executed by the customer before the dealer and sent by the dealer to the appellant, same were then assigned to the Electric Home and Farm Authority for immediate cash, from which any amounts due to the dealers or representatives were paid. Payments upon the financed paper were collected by the Commonwealth Edison Company of Chicago.

The witness Fields testified that after the time-contract was approved by the Electric Home and Farm Authority, appellant paid him cash for the sale made by him; that if the sale was made for less than the regular price, the dealer would lose.

Witness Charles F. Everett testified that down payments collected by him, together with the time-contract paper, were turned in to the appellant and that once a week, or as soon as the contract was approved as to credit, he received the money due to him from the appellant; that appellant asked him whether he would work for him and, upon engaging in the sales, that he received leads from the Kirby Company; that he was not permitted to change any of the terms of the sale; that he was requested by appellant to call on customers who complained that the cleaner was not working properly and that, after checking on the complaint, he reported how he handled the matter to the office. There was testimony by the appellant that the dealers came into the office sometimes once a day, sometimes twice a week, and that inquiries and checkups were made as to how the individual men were getting along; that reports were made on the number of demonstrations; that if a man had not shown up for an unusual length of time, he was requested to turn in his machine and terminate his relationships; that it had not been necessary to dismiss a dealer since, after calling them in, they usually voluntarily left; that on occasions work was planned for the men; that repossessions of vacuum cleaners were handled by the appellant's regular employees; that where the dealer had been paid more for his profit than his customer had paid in, the dealer would be charged back for such overage; that notices were sent out when special meetings were to be had and that the appellant kept records of the amount of earnings of each of the men.

At the inception of the hearing it was stipulated that the amounts of compensation received by the contested individuals were as appeared in the forms filed and signed by the field advisor. The stipulation was subject, however, to the condition that the amounts could be checked by the attorney for the appellant and, if errors were found, it would

be permissible to go into such errors and, subject thereto, the amounts were stipulated to be correct.

The Director's representative made a finding that the men in question were salesmen performing services in the employment of the appellant, under the provisions of the Unemployment Compensation Act; that the individuals were not free from the control or direction of the appellant; that the services were not outside the usual course of the appellant's business; that the individuals in question were not engaged in an independently established trade, occupation, profession or business.

Objections were filed by Daumit to the findings of the Director's representative and also that the report was insufficient and incomplete in not containing the name or names of the persons that the Department found were employees of appellant, the period of employment, the amount the Department claims was paid or the amount of compensation or penalty claimed to be due from the appellant.

The Director entered a decision in conformity with the Director's representative's findings. A writ of *certiorari* was issued by the clerk of the circuit court of Cook county and transcript of record or return thereto filed August 20, 1943, in which the Director of Labor certified "The foregoing is a true and correct copy of all determinations, proceedings, notices filed and had in this matter."

The appellant, before the circuit court, complained that although Director's exhibit 8 was admitted, the contents of that exhibit are unknown and the only entry in the record is as follows: "Director's Exhibit 8. This exhibit includes supplementary Employer's Report of Wages for the four calendar quarters of the years 1940 and 1942. The original exhibit will be presented to the court at the hearing."

Appellant then moved to strike the transcript from the files or, in the alternative, that the proceedings be re-referred to the Department of Labor so that a proper find-

ing and transcript may be filed. This relief was denied by the circuit court and the decision of the Director was affirmed.

It is now contended by the appellant (1) That the record filed by the Director of Labor is incomplete and no judgment can be sustained thereon, and that the trial court erred in denying the motion of the appellant to require the Director to file a complete transcript of proceedings or to amend or correct the transcript filed or to refer the proceedings to the Director so that a proper transcript may be filed. (2) That the findings of fact against the appellant are contrary to the manifest weight of the evidence.

The record indicates that the Director's assessment, with demand for payment, was served upon the appellant and was for contributions due upon wages of salesmen or house to house solicitors. The assessment covered the years 1940 and 1941 by quarters. The appellant's protest to the determination and assessment by the Director, in substance, set forth only that the alleged salesmen were not in employment by him. No point was made of the sufficiency of the Director's determination and assessment.

At the time of the first hearing before the Director's representative no objection was made to the admission in evidence of the said notice of determination and assessment. The amounts contained in the Director's determination and assessment, being the amounts reported by the field advisor as the compensation received by the salesmen or house to house canvassers during the period involved, were stipulated as correct. Thereupon Director's Exhibit 8 was admitted in evidence but, as hereinabove disclosed, no copy thereof was placed in the record.

Appellant contends that his motions should have been allowed, since the instant assessment would not be *res judicata* should the Director seek to place a second assess-

ment upon the same wages paid to the same salesmen. No reason appears why a copy of the original exhibit was not included in the record. Were it not for the stipulation, this failure could be considered a fatal error.

It is clear from the record, however, that at the time the stipulation was made, the amounts of wages paid to the salesmen or dealers, as the appellant chose to call them, were not in contest. The determination and assessment contained the wages pertaining to the salesmen as a class of employees and it was to this that the appellant objected. Not until after the decision of the Director was any objection made as to the failure to include the names of the persons involved. The entire testimony considered the claim of the Director as against a class of persons and not to the individuals therein contained. It is thus obvious that the absence or presence of the names of the persons in the record making up the group as to whose wages the Director levied an assessment, in view of the stipulation, was not material.

The question as to whether the so-called dealers fall within the terms of employees within the meaning of section 2(f)(5) of the Unemployment Compensation Act (Ill. Rev. Stat. 1939, chap. 48, par. 218,) presents a situation quite difficult of determination. As has been said by this court, the Unemployment Compensation Act defines a class of individuals who are entitled to receive benefits, the provisions of the statute being different from the common-law conceptions of employment where the relationship of master and servant exists. *Miller, Inc.,* v. *Murphy,* 379 Ill. 524; *Rozran* v. *Durkin,* 381 Ill. 97; *Peasley* v. *Murphy,* 381 Ill. 187; *Smith* v. *Murphy,* 384 Ill. 34.

An individual is an employee within the terms of the act unless he is excepted by concurrence of all three conjunctive subparagraphs of paragraph (5) of subsection (f) of section 2, which reads as follows: "(5) Services per-

formed by an individual shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Director that—(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is engaged in an independently established trade, occupation, profession or business."

. In *Peasley* v. *Murphy*, 381 Ill. 187, it was said that under the act the definition of employment is sufficiently pervasive to include all workers to whose security unemployment is a threat.

The appellant, in contending that the "dealers" were independent brokers or contractors, relies mainly on the case of *Postal Telegraph Sales Corporation* v. *Industrial Com.* 377 Ill. 523. There, it was held that a salesman who sold upon a commission basis and worked independently of supervision with no directions as to how to sell or to whom, with a right to hire and discharge sub-agents, and being entrusted with the property and responsible for it, was not an employee but an independent contractor, although it was also there said that the right to control the manner of doing the work, not the actual control, is an important if not the principal consideration which determines whether the worker is an employee or an independent contractor.

In view of our previous holdings, reliance upon cases arising under workmen's compensation laws cannot avail one when determining whether or not an individual is an employee within the terms of the Unemployment Compensation Act. *Oakwoods Cemetery Ass'n* v. *Murphy*, 383 Ill. 301.

Pursuant to section 2(f)(1) of the act, as amended, employment means services performed by an individual for an employing unit. This relationship must be determined from all of the actual facts in evidence. It would appear that the appellant here, through the designation of the individuals whose status is contested and the particular arrangement under which they were employed, was endeavoring to successfully by-pass the provisions of the Unemployment Compensation Act. It is necessary, then, to investigate the relationship by an examination of the incidents and circumstances surrounding the classification, so that it may be determined what the relationship was in fact.

The usual manner of doing business was, admittedly, by the time-contract sale. The so-called dealer here had no authority to alter any terms or provisions thereof and turned the contract in to the appellant for examination for his approval or rejection. The contract was the appellant's property. It was he who assigned same to the finance agency and who was solely responsible for the amount received, in case of default. Title to the machines continued in appellant until transferred to the vendee. In the event of a default and repossession, it was the appellant's collectors who repossessed the machine or who went after payments in default. Here, then, there was not a sale made by the "dealer" but merely an offer of sale which could be approved or rejected by the appellant. Although appellant testified as to a franchise agreement, same was oral and the terms thereof were never revealed.

In cases presenting power and authority of sales representatives somewhat similar to the instant case, it has been held that such sales representatives were performing services in employment. *Electrolux Corp.* v. *Board of Review,* 129 N. J. L. 154, 28 Atl. 2d 207; *Schomp and Board of Review* v. *Fuller Brush Co.* 124 N. J. L. 487, 12 Atl. 2d 702; *Leinbach* v. *Unemployment Compensation Board*

*of Review,* 146 Pa. Sup. 237, 22 Atl. 2d 57; *Mulhausen* v. *Bates,* 9 Wash. 2d 264, 114 Pac. 2d. 995.

There was no power in the salesmen to vest power in a purchaser. In fact, the salesmen or dealers acted only as representatives of the appellant in a more or less service relationship, taking orders in the name of appellant, subject to his approval, and not for themselves as independent contractors.

Subparagraph (A) of section 2(f)(5) of the act contemplates that there be no right of control by the appellant over the salesmen in order to make them independent contractors. We are here concerned with general control and it is not satisfactory that details exist where the individual is free to exercise his own judgment. The appellant retained the power to send the individuals out on complaints to investigate whether the machine was operating properly, to exchange a machine, if necessary, instructed them in the manner of sales, sales activities, methods of salesmanship; they were urged to attend meetings and make reports, and the appellant, as he testified, planned their work.

Charles F. Everett testified that appellant gave him leads; that appellant held the trade-ins until the contract was approved and then released same to the salesmen, at which time the trade-ins became the property of the salesmen. Appellant kept records on the sales and the amounts paid to the men. Appellant placed supervisors over the men and held the right to call in the machine at any time without any liability whatsoever. We find here that appellant's suggestions and recommendations as to the methods of procedure and salesmanship were mere recommendations as long as they were followed by the salesmen, but, if not so followed, were coupled with the power on the part of the appellant to discharge the individual. There is more control exercised here than in either *Rozran* v. *Durkin,* 381 Ill. 97, or *Peasley* v. *Murphy,* 381 Ill. 187. It cannot

be said, from an examination of the evidence, that the so-called dealers were free from control within the meaning of subparagraph (A). The burden of so proving is upon the appellant. *Peasley* v. *Murphy*, 381 Ill. 187.

As to subparagraph (B) it is quite obvious that the services of the salesmen were in the usual course of appellant's business and were, in part, performed at appellant's place of business. The work was all accomplished within the territory of the city of Chicago in which the appellant was distributor. His profits were almost entirely from the sales made by the individuals in contest. The entire office staff consisted of persons whose employment stemmed out of the services of the salesmen. It was at the office where the salesmen received their individual training instructions, recommendations and limitations on business methods.

Giving consideration to the requirements of subparagraph (C), it is apparent that the act contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate same without hindrance from any individual whatsoever and whose business also is free from control. Here, the so-called dealers had no business to sell or give away. They were dependent on the appellant for their employment. Their continuity therein depended upon their accomplishing their tasks to the satisfaction of the appellant. Although appellant urges that the individuals were free to carry other lines, it is a fact that there is no evidence that any of the individuals did so. Their endeavor existed only by reason of the employment for the appellant and they were subject to his willingness to retain them and were constantly subject to discharge, at which time they were out of employment.

Under the circumstances, it cannot be said that the appellant has met the burden imposed upon him by the statute to show that the requirements of section 2(f)(5) are met

herein. The so-called profits appellant contends the dealers received were nothing more than commissions, and the dealers were nothing more than sales representatives of the appellant.

For this reason, the judgment of the circuit court, affirming the decision of the Director, is hereby affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.