(No. 32113.—

PARKS CAB COMPANY, Appellant, *vs.* FRANK ANNUNZIO, Director of Labor, *et al.,* Appellees.

*Opinion filed September 17, 1952.*

WALKER, ATWOOD, ZUKOWSKI & McFARLAND, of Chicago, (PETER B. ATWOOD, and EDWIN F. ZUKOWSKI, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, all of Chicago, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The question presented is whether, under the unique circumstances of this case, certain taxicab drivers are employees of the Parks Cab Company under the Unemployment Compensation Act. A referee found them to be employees, and the Board of Review of the Department of Labor affirmed the finding. A judgment of the superior court of Cook County in an administrative review proceeding confirmed the decision of the Board of Review. The cab company appeals.

The question as to the status of the drivers as employees arose when a former file clerk and a former driver sought unemployment compensation. If the drivers are employees, the company has six or more employees; if the drivers are not employees, the company has less than six employees and is not within the coverage of the act. Ill. Rev. Stat. 1947, chap. 48, par. 218.

Under the taxicab ordinance of the city of Chicago, Parks Cab Company holds thirteen licenses. It owns no cabs. By written contracts the company leases its licenses to persons who own cabs, for a rental of $60 per week. By their terms, the contracts are to operate as assignments, from week to week, of the company's licenses.

The company agrees to carry insurance on the cabs. Each lessee agrees to be responsible for property damage; to report all accidents to the company; to bear the cost of repairs and operating expenses; to conform to all laws

and ordinances, and to transfer title to his vehicle to the company as "security and indemnity for the Company." The contracts also provide that nothing therein shall constitute the lessee an employee of the company; that the relationship is that of lessor-lessee, and that the lessee is an independent contractor. It is agreed that the lessee shall not be subject to any control, direction or influence by the company, and that the company will not exert, urge, or exercise any control or interference in the operation of the taxicab pursuant to the lease.

The company manager testified that the company owns thirteen licenses but no cabs; that these licenses are leased under written agreements to drivers who own their own vehicles; that the only consideration passing between the parties is the payment of $60 per week by each driver to the company; that there is no other arrangement between them; that the company carries the insurance on the vehicles and that title to them is transferred into the company's name; that the company maintains a garage for the convenience of the drivers on a purely voluntary basis, but has no gasoline station and drivers can buy their gasoline and other supplies and have repairs made wherever they wish; that the cabs are not painted a uniform color, nor do they carry a uniform device or decorative scheme; that the drivers hire other drivers to run the cabs for them if they wish; that the company does not maintain a call box, takes no calls for customers, never inspects the meters and does not know how much money any of the drivers make; that the drivers operate on the meter or on the "jitney system" as they wish, and that the company had paid social security taxes on amounts furnished to it by the drivers as their weekly earnings, but that these payments had subsequently been refunded.

We start with the proposition, frequently reiterated, that the definitions contained in the statute are controlling and that common-law concepts of master and servant and

independent contractor do not govern the administration of the act. (*Wallace* v. *Annunzio,* 411 Ill. 172; *Concrete Materials Corp.* v. *Gordon,* 395 Ill. 203; *Van Ogden, Inc.* v. *Murphy,* 390 Ill. 133; *New York Life Insurance Co.* v. *Murphy,* 388 Ill. 316; *Smith* v. *Murphy,* 384 Ill. 34.) Section 2(f)(1), defining "employment," provides: "Subject to the other provisions of this subsection, 'employment' means any service * * * performed by an individual for an employing unit, * * *." (Ill. Rev. Stat. 1947, chap. 48, par. 218.) From this broad definition which includes relationships not ordinarily considered to constitute employment, various exceptions are carved out, the one most frequently encountered in litigation being the conjunctive test of section 2(f)(5) which resembles, although it is not identical with, the common-law independent contractor.

The Board of Review made findings that the drivers performed services for the company; that the company was an "employing unit" as to the drivers; that the services were performed by the drivers subject to the company's control; that services were performed in the usual course of the company's business; that the drivers were not independently established in their business, and that the net remuneration received by the drivers constituted "wages" within the act. All of these issues are argued in this court, but as we view the case it is necessary to pass upon only one of them. For unless the drivers are performing services for the company, employment does not exist under the statutory definition.

The actual situation here is that an individual who owns an automobile or automobiles wants to engage in the taxicab business. He cannot do so because he has no license. The company has licenses but does not want to engage in the actual operation of taxicabs. The owner of the automobile therefore leases a license from the company for a weekly rental and goes into the business of furnishing taxicab service to the public for fares. This operation is not a

service for the lessor. The lessor is not the operator of the cab. The driver operates the cabs himself or employs others to operate them for him. He could operate other taxicabs under his own license or under licenses leased from other owners. The company's interest ceases with the leasing of the license. Apart from possible tort liability, the company is not concerned with the operation of the cabs or the results of their operation. Its ostensible title to the cabs is only a security interest. It has by its contract and in fact negatived all control over the operation of the cabs. Its business is the leasing of taxicab licenses, and in that business the drivers render no services for it. Cf. *Wallace* v. *Annunzio*, 411 Ill. 172.

The appellees argue, however, that the actual relationship which exists is given a completely different color by the city ordinances regulating taxicabs. They say that the appellant was licensed to operate cabs, not to lease them; that the provisions of the ordinances relative to licensing, vehicle ownership, responsibility, and insurance, make the license holder the actual operator of the taxicab as a matter of law. Moreover, they argue, these ordinances were specifically made a part of the lease contract. In the alternative, they contend that if the contracts between the company and the drivers violate the city ordinances they are void and should not be given effect by this court.

The Unemployment Compensation Act deals with realities of economic life. It is with these same realities that we are concerned in determining questions which arise in the course of its administration. Issues as to status are determined by applying the terms of the statute to the facts as they exist, and in that process the characterizations which the parties apply to their relationships do not control. So we have disregarded the designations applied by the parties, pointing out that their "relationship must be determined from all of the actual facts in evidence." *Murphy* v. *Daumit*, 387 Ill. 406, 415.

We are not here bound by the "independent contractor" label which the company and the drivers have applied to their relationship. Nor are we here concerned with compliance or noncompliance with the requirements imposed by ordinance upon taxicab licensees. *Magruder* v. *Yellow Cab Co. of D. C.* 141 Fed. 2d 324, involved an identical argument. An order of the Public Utilities Commission of the District of Columbia provided that no licensed public vehicle "shall be operated by any person other than the owner of such vehicle or his duly authorized employee." In finding the relationship between company and drivers to be that of lessor and lessees, as distinguished from that of employer and employees, the court stated that a possible violation of the commission's order was in no way determinative of the actual relationship between Yellow Cab and its drivers. So here; the fact that the contract may have violated the city ordinances is not determinative of the actual relationship between Parks Cab and its drivers. We need not and do not decide whether there has been, in fact, a violation here. To the extent that other courts (*Kaus* v. *Unemployment Compensation Com.* 230 Iowa, 860, 299 N.W. 415; *Radley* v. *Commonwealth,* 297 Ky. 830, 181 S.W. 2d 417; *Redwine* v. *Wilkes,* 83 Ga. App. 645, 64 S.E. 2d 101;) have attached greater significance to the provisions of franchise ordinances or statutes, we do not agree. In our view economic facts as they actually exist are determinative here.

The question of the status of taxicab drivers under unemployment compensation acts has frequently arisen. (For collections and discussions of the cases see 10 A.L.R. 2d 369; 10 Ohio State Law Journal, 166, footnote 68.) We have carefully considered the decisions of other courts. Because they turn upon their own peculiar facts, detailed analysis would not be helpful. In none of them has the alleged employer been so completely divorced from the operation of taxicabs as here. It is upon an appraisal of

the particular facts before us, which, so far as we have been able to ascertain, did not exist in any of the other cases, that we hold that the relationship of employer and employee does not exist.

The judgment of the superior court of Cook County is reversed, and the allowance of benefits by the Board of Review is set aside.                    *Judgment reversed.*