## Commonwealth v. Research, Inc.

*Ralph Swartz*, for appellant.

*John F. Finney*, *Morley W. Baker*, Special Deputy Attorney General, *Herbert B. Cohen*, Attorney General, for Commonwealth.

SOHN, J., December 5, 1955.—This case concerns an appeal filed by defendant from an assessment made by plaintiff against it under the provisions of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751.

The principal question involved is whether certain persons employed by defendant as "interviewers" are employes under the Unemployment Compensation Law, or whether they are independent contractors, and therefore not within the provisions of the Unem-

ployment Compensation Law. The facts are not in dispute and have been stipulated. A decision thereon is requested of this court, under the provisions of the Act of April 22, 1874, P. L. 109.

The facts as stipulated are as follows:

"1. The Petitioner is a corporation organized and existing under the Laws of the Commonwealth of Pennsylvania, having its principal office at 1418 Walnut Street, Philadelphia, Pennsylvania, and will hereinafter be referred to as the 'Company'.

"2. The Respondent is the Bureau of Employment and Unemployment Compensation, Department of Labor and Industry of the Commonwealth of Pennsylvania, hereinafter referred to as the 'Bureau', charged with the administration and enforcement of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, P. L. (1937) 2897, as amended.

"3. The Company has been an employer subject to the contribution provisions of the Pennsylvania Unemployment Compensation Law since 1945.

"4. The said Company failed to include in its periodic reports remuneration paid to individuals known as 'interviewers' from the first quarter of 1945, up to and including the first quarter of 1949.

"5. On July 20, 1949, the Bureau of Employment and Unemployment Compensation, Department of Labor and Industry of the Commonwealth of Pennsylvania, entered an assessment against the Company for unemployment compensation contributions upon remuneration paid to the said interviewers for the period from the first quarter of 1945 to the first quarter of 1949, in the principal sum of $774.10, plus interest thereon.

"6. A Petition for Reassessment was timely filed by the Petitioner in which it alleged that the accurate report of earnings for interviewers for the period in

question was $13,672.89, making a tax liability, exclusive of interest, of $369.16, which the Commonwealth accepts as constituting the full and complete amount of unemployment compensation tax due on amounts paid during the period of time involved to the said interviewers, plus interest.

"7. The assessment provisions of the Pennsylvania Unemployment Compensation Law (Section 304) were strictly followed by the Bureau.

"8. In accordance with said provisions, the Company filed a Petition for Reassessment and subsequently a reassessment hearing was held on this Petition.

"9. The Bureau held the Company liable for remuneration paid to its interviewers and the Company thereupon timely filed its Petition in Appeal with the Court of Common Pleas of Dauphin County, which Court has jurisdiction to consider all questions raised in this cause.

"10. The Notes of Testimony and the Exhibits in evidence before the Bureau in connection with the assessment hearing shall constitute the record in this case.

"11. The purpose of the Company is making and conducting surveys, polls, market and consumers' researches; reporting and analyzing political, social, economic and business trends; also for the distribution of direct mail advertisement.

"Its principal place of business is 1418 Walnut Street, Philadelphia, Pennsylvania, and the Company also has a warehouse at 931 Green Street, Philadelphia, Pennsylvania.

"12. The Company has filed reports with the Bureau, beginning with the first quarter of 1945, on certain of its employes, however has failed to file on remuneration paid to interviewers.

"13. The Company formulates sample questionaires and instruction sheets for the use of interviewers by 'pre-testing' same before they are given to the interviewers. They employ no full time interviewers, and the interviewers are contacted either by a file compiled either by the Company or by other companies, by people writing in desirous to become interviewers, or by recommendations from other interviewers.

"14. Contact is made by the Company by letter to the interviewer, asking if he or she will be available in a certain area on a certain week or weeks. No rate of pay is mentioned and, if the interviewer accepts the work, he or she either comes in to the office of the Company to pick up the assignment or questionnaires, or the same is forwarded to them.

"15. There is a uniform rate of $1.00 per hour as an established price, and the interviewers work on an hourly basis. If the interviewers submit an excessive bill to the Company, they would not be retained to conduct further interviews.

"16. The questionnaire is self-explanatory, is made up by the Company, there are no field supervisors as such, and at times there are general discussions in respect to the assignment.

"17. The interviewer turns in his bill at the completion of his assignment and a check is issued to him or her by the Company. They are paid their carfare in the field, together with telephone calls and lunch money. They are given a specific area, told how many interviews to make, and there is a deadline on the assignment. The Company, in its Capital Stock Reports, captions the remuneration paid to these interviewers as 'field research'.

"18. Questionnaires are given the interviewers with the name 'Research, Inc.', at the top, together with a card specifying his or her area to be worked, and

they must obtain a specified number of completed·interviews. These area maps are prepared by the Company and have the Company's name thereon. Sometimes attached to the questionnaire and area card are explanatory sheets prepared by the Company.

"19. These interviews are generally on a house-to-house basis, however they can be limited to men or women only, or to certain income or racial groups.

"20. At the completion of the assignment, the interviewer prepares an itemized expense account on the Company's form and on this form it is stated they are accepting this assignment in the capacity of an independent contractor. As an introduction to the interview, it is stated that they represent 'Research, Inc.' On the same form, 'Exhibit 7', wherein it is stated they are acting in the capacity of independent contractor, it is stated 'the following items are to be filled out strictly in accordance with the rate of payment for this assignment as stated in our instructions'.

"21. No other identification cards or letters are given to the interviewers; many of these interviewers are housewives or have some other occupation, and progress is reported to the Company to assure that the assignment will be completed timely, and at times the Company has requested such progress reports.

"22. No bonuses or advances are given the interviewers and if purchases have to be made in respect to the project, they are charged to the Company. About 80% of the interviewers pick their material up from the office of the Company. When an assignment is made, it is contemplated they will spend full time on the assignment; however, leeway is made for those who cannot spend full time. No special education or experience qualifications are necessary, they have no desk or working space at the offices of the Company; and they may be doing interviewing for other com-

panies during the same time. They are not told how many hours to put in on the job, but are given a specified number of interviews, must meet a deadline, and are given a specific area."

### Discussion

The first question confronting us is whether the services performed by the interviewers in this case constitute "employment" within the intent and meaning of the act. "Employer" is defined in section 4($j$) as:

" . . . every . . . individual, . . . corporation . . . who or which . . . employs any employe in employment subject to this act."

"Employe" is defined in section 4($i$) as:

". . . every individual . . . performing . . . services for an employer in an employment subject to this act."

"Employment" is defined in section 4($l$) (1) as:

". . . all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral. . . ."

Section 4($l$) (2) (B) provides:

". . . services performed by an individual for wages shall be deemed to be employment subject to this act, *unless and until* it is shown to the *satisfaction of the department* that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is *customarily* engaged in an *independently established* trade, occupation, profession or business." (Italics supplied.)

In section 4($x$), it is provided:

" 'Wages' means all remuneration . . . paid by an employer to an individual with respect to his employment. . . ."

It is necessary to keep these definitions in mind while discussing the law as applied to the facts stipulated in this case.

As pointed out by Mr. Justice Horace Stern, now Chief Justice Stern, in Department of Labor and Industry v. Aluminum Cooking Utensil Company, 368 Pa. 276 (1951):

"On the question of the scope of the controlling term 'employment'. . . . Is it to be understood as limited by the technical common-law concept of the relationship of employer and employe? Or does it extend the employment relationship for purposes of the act to a more inclusive group, without reference to, and unrestricted by, criteria applicable to the determination of such relationship at common law. Having in mind the broad purposes of this unemployment compensation legislation as expressed in the preamble to the act, it is our opinion that it was the intention of the legislature to provide for a larger coverage of employes entitled to unemployment compensation than merely those who would be considered employes under the common law, and to include, as it expressly states, 'all services performed for remuneration', subject only to the exceptions specified in other provisions of the act hereinafter referred to. This view is in harmony with the interpretation given by the United States Supreme Court to the meaning of the term 'employe' in the National Labor Relations Act *(National Labor Relations Board v. Hearst Publications, Inc.,* 322 U. S. 111), and in the Social Security Act *(United States v. Silk,* 331 U. S. 704; *Bartels v. Birmingham, Collector of Internal Revenue,* 332 U. S. 126)."

We feel, in the light of this clear and distinct language, as used by the Chief Justice in his opinion, that there can be no doubt but that the interviewers in this case are employes in the employment of Re-

search, Inc., within the intention of the Unemployment Compensation Law.

The second question then arises as to whether the services performed by them are performed for *wages* (upon which the employer's contributions must be based) under section $4(l)(2)(B)$ of the act, as amended, which provides as follows:

"Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business."

As pointed out by Chief Justice Stern in the opinion just cited, these exclusions from the class of employes otherwise created by the act are in the conjunctive; therefore, they must both coexist if the employer is to be exempted from the payment of contributions based upon the employment of such individuals.

Were the "interviewers" in this case free from control or right of control, or direction over the performance of their services, both under their contract or in fact? We must keep in mind the purpose of the Unemployment Compensation Law as expressed therein. The fact that an employe is left largely to his own devices in performing services does not lessen his dependency for his economic survival upon the continuation of the employment and the remuneration which flows therefrom. A declaration of the policy of the Commonwealth is in the first portion of the act, and the definition of "employment" should be interpreted with a view of effectuating the underlying policy of

the legislature. The common law connotations of master, servant, employe or independent contractor are not those within the contemplation of the Unemployment Compensation Law. An employer's liability for contributions is based upon the payment by him of "wages" for "employment". Wages is remuneration for the services performed. The question of contribution liability depends upon whether the services are performed in "employment", which is the subject of the statutory definition herein given.

In considering the modus operandi in this case, there are many features which, we feel, indicate control or right of control. The relationship is started usually by a letter or a telephone call from Research, Inc., to the individual. A definite assignment of territory is given. A definite number of interviews must be made. A definite time limit is fixed. The interviewers must follow instructions and follow the questionnaires given to them by the company. The reports are made on forms prepared by the company, as well as the interviewer's expense account. The company has the right to put more than one individual in a specific territory. At times, progess reports are made to the company. The material must be turned in at a definite time. The interviewers report to those interviewed that they are from Research, Inc. The assignment contemplates full time, if possible, while engaged on the assignment. All of these elements certainly are indicative of definite control.

In addition to these factors, Research, Inc., has the right to terminate the employment. A definite time limit is set and if the work is not completed, the employer has the right to employ other people. If an overcharge is made, defendant likewise has a right to terminate the employment and not to again employ the individual.

All of these matters clearly indicate the control of Research, Inc., over the individual interviewer, and result in the employer not bringing itself within the excluding provisions of subsection (*a*) of section 4(*l*) (2) (B) of the Unemployment Compensation Law.

For cases illustrating facts resulting in a holding that the individuals employed were not independent contractors, but on the other hand were employes and within the provisions of the Unemployment Compensation Law, see the opinions of Judge William E. Hirt in Leinbach Company, Inc., v. Unemployment Compensation Board of Review, 146 Pa. Superior Ct. 237 (1941), and Judge Chester H. Rhodes, now President Judge of our Superior Court, in American Writing Machine Co. v. Unemployment Compensation Board of Review, 148 Pa. Superior Ct. 299 (1942).

It is unnecessary for us to pass upon the question whether the "interviewer" is "customarily engaged in an independently established trade, occupation, profession or business" as provided in section 4(*l*) (2)- (B) (*b*) of the Unemployment Compensation Law in order to take him out of its provisions, as the Supreme Court in Department of Labor and Industry v. Aluminum Cooking Utensil Company, supra, has ruled that these exclusions from the class of employes otherwise created by the act are in the conjunctive and both subsections (*a*) and (*b*) must coexist in order to exempt the employer from contribution.

However, we have the case of Murphy v. Daumit, 387 Ill. 406, 56 N. E. 2d. 800 (1944), for guidance with respect to the interpretation of the phrase "such individual is engaged in an independently established trade, occupation, profession or business." The language of the Illinois statute and the Pennsylvania statute are identical except for the inclusion of the word "customarily" before the word "engaged". In the stipulation of facts, paragraph 21 sets forth, inter

alia, "many of these interviewers are housewives or have some other occupation." Inasmuch as it is the duty of appellant to bring these employes within the exclusions provided by the Unemployment Compensation Law, we must presume, in the light of the lack of information on this subject, that they are not customarily engaged in an independently established trade, occupation, profession or business. In Murphy v. Daumit, supra, it is held, at page 417:

". . . it is apparent that the act contemplates that one who is engaged in an independent enterprise is an individual who has a *proprietary interest* in such business to the extent that he can operate same *without hindrance from any individual whatsoever* and whose business also is free from control. Here, the so-called dealers had no business to sell or give away. They were dependent on the appellant for their employment. . . . Their endeavor existed only by reason of the employment for the appellant and they were subject to his willingness to retain them and were constantly subject to discharge, at which time they were out of employment." (Italics supplied.)

We are of the opinion that this pronouncement by the Illinois court is a correct interpretation likewise of the Pennsylvania statute. Here the interviewer has no place of business of his own, no capital invested, is given car fare and expenses, uses the questionnaires of his employer, turns in the material at definite times, is paid from the time he leaves home and these factors, together with the factors previously stated in respect to control, negative the idea of the interviewer being in business for himself. It is something which he cannot sell or give away, he owns no merchandise and has no financial control over the subject matter and is simply in the capacity of a part time employe. Under this test, the business must be *established*, that is, it must have been built up or he must have acquired some

property or special skill from which a livelihood must be realized. The act also required it would be established independently. This means that it enables him to earn a livelihood, irrespective of his contractor's association with any particular employer. Further, he must *customarily* be engaged in earning a livelihood in this manner. An individual who usually makes his livelihood from an enterprise which he can call his own and whose earning capacity does not depend upon the success of another business, may be customarily engaged in an independent business. In this case the work was merely a part of the business of Research, Inc., and the interviewer's remuneration depended upon the will and enterprise of that company.

In view of what we have heretofore said, we arrive at the following

### Conclusions of Law

1. The "interviewers" employed by Research, Inc., are employes of said company within the provisions of the Unemployment Compensation Law.

2. Appellant is their employer.

3. The "interviewers" employed by Research, Inc., are not independent contractors.

4. The remuneration paid said "interviewers" is "wages" within the contemplation of the Unemployment Compensation Law.

5. The facts do not bring said interviewers within the excluding provisions of the Unemployment Compensation Law.

6. Research, Inc., is liable for the assessment contribution assessed against it by the Bureau of Employment and Unemployment Compensation, Department of Labor and Industry of the Commonwealth of Pennsylvania, as set forth in the stipulation of facts filed herein.

7. The appeal filed by Research, Inc., must be dismissed and denied and the reassessment affirmed.

We accordingly make the following

*Order*

And now, December 5, 1955, the assessment of unemployment compensation made by the Bureau of Employment and Unemployment Compensation, Department of Labor and Industry of the Commonwealth of Pennsylvania against Research, Inc., is hereby affirmed and the appeal of Research, Inc., denied and dismissed.