(No. 34079.—

PAUL L. MYERS, doing business as American Taxi Co., *et al.,* Appellees, *vs.* ROY F. CUMMINS, Director of Labor, Appellant.

*Opinion filed November 26, 1956.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellant.

RALPH T. SMITH, of Alton, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The question here is whether the plaintiffs were employers of certain taxicab drivers under the Unemployment Compensation Act. The Director of Labor found that they were. The circuit court of Madison County reversed, and the Director appeals.

The question arose when the Director of Labor made assessments against plaintiffs for unemployment contributions, with penalties. It was agreed that if the plaintiffs were in fact employers of the taxicab drivers the Director's assessment was correct. Each plaintiff would then have had six or more employees, as required by the act.

The city of Alton licensed Paul Myers and Harold Myers separately to operate taxicabs in the city. They owned approximately four taxicabs each, and although they remained individual proprietors of their enterprises, they shared the same trade name, offices and other facilities. Thus organized they would enter, as the American Taxi Company, into agreements with drivers for the operation of their taxicabs. For simplicity's sake we shall refer to these agreements as the agreements of the Company.

The Company had a standard form contract. While it is not clear that the form was always used, the testimony of both plaintiffs shows that oral agreements were essentially the same as the written agreement. The written agreement, entitled "Taxicab Lease Agreement," provides that the Company will keep the vehicles in safe operating condition; that it will keep liability insurance on them, and that the driver will be indemnified by the Company for any liability arising out of their operation. It further provides that the driver agrees to abide by all operating rules and regulations of the Company, to accept such passengers as the Company presents to him for transportation, and to collect all fares for the operation of the taxicab. The Company agrees to replace parts and to make all necessary

repairs and to have the taxicab greased and the oil changed as often as necessary. The contract is terminable by either party on one day's notice in writing. In case of breach the Company can without notice terminate the lease and take possession of the vehicle wherever found.

The drivers were not required to guarantee any specific rental. The agreement was that their fares, exclusive of tips, were to be divided equally with the Company. There is conflict in the testimony as to whether the division was to be made after a full deduction by the driver of his operating expenses, such as gas, oil and flat tires, or whether the drivers were required to pay half such costs themselves.

The testimony further discloses that the Company would, on occasion, specify the gas stations where gas was to be bought to the exclusion of all others; that the drivers were not permitted to hire others to drive the cabs, or to use the cabs in any other business. There was a strict rule against drinking on the job and the testimony of Paul Myers shows that he would follow drivers suspected of violating this rule.

The cabs were equipped with radios, but there were no meters. The city of Alton taxicab ordinance provides that no one shall be charged more than 50 cents per person within the city limits. The Company fixed a 25-cent zone, a 50-cent zone, and, for journeys outside the city limits, a 75-cent zone. The testimony shows that the drivers, whether they were required to or not, would report their destination on the radio and that they expected to be told what fare to collect. The drivers would also report "light" after the completion of a run. They were permitted to pick up fares on the street but it was the opinion of one driver that the Company could tell if additional fares were picked up by the gas consumption. The drivers were required to join a union, and cases of reckless driving, discourtesy, overcharges and accidents were reported to the union steward for disciplinary action. These appear to have

been union rules and not requirements imposed by the Company.

The cabs were all the same color. The drivers were not required to wear a uniform but the Company had badges for drivers who wanted them. The Company maintained an office, furnished cab stands and a waiting room. Dispatchers and other staff were employed. The Company had a listing in the classified section of the telephone directory in the name of Paul Myers. The drivers were required to make a one-dollar contribution from their portion of the fares on each shift towards the maintenance of these facilities.

Section 206 of the Unemployment Compensation Act defines "employment" as follows: "* * * 'employment' means any service * * * performed by an individual for an employing unit * * *." (Ill. Rev. Stat. 1955, chap. 48, par. 316.) Plaintiffs contend that the drivers were not performing service for the Company, and in support of this contention they rely on *Parks Cab Co.* v. *Annunzio,* 412 Ill. 549. That case, like this one, involved taxicabs, but there the resemblance ceases. In that case the company was engaged in the business of leasing licenses to operate taxicabs and not in the business of operating cabs. It was completely divorced, in fact as well as in form, from the operations of cabs.

In the *Parks case* the income of the company did not depend upon the operation of any cabs; in this case, unless the cabs operate, there is no income. In the *Parks case* the drivers were not required to accept passengers presented to them by the company; in this case the written contract requires the driver to accept such passengers as the Company presents to him for transportation.

In the *Parks case* the company provided no cab stands, waiting room, or dispatcher; in the present case the Company maintains a waiting room and hires dispatchers. The plaintiffs contend that the existence of these facilities does

not argue that the drivers were performing services for them because the facilities were maintained by the drivers themselves on a cooperative basis, each contributing one dollar per shift to this end. But there is no suggestion in the record that the drivers had any voice in the leasing of waiting rooms or cab stands, in the hiring of the dispatchers, or in the hiring of other drivers. Nor is it suggested that the drivers were responsible for rent for the waiting room or the salaries of dispatchers. It is impossible to regard the drivers as principals in a co-operative venture.

Plaintiffs also argue that the drivers were not performing service for the Company within the act because they were not being paid any compensation. This is so, they say, because the only money which passed moved from the drivers to the Company. But the statute deals with economic realities, (*Parks Cab Co.* v. *Annunzio,* 412 Ill. 549, 553,) and the mechanics of compensation are not material. (*Van Ogden, Inc.* v. *Murphy,* 390 Ill. 133.) The drivers received remuneration, and that is what is significant. *Crouch* v. *Murphy,* 390 Ill. 112; cf. *Salt Lake Transportation Co.* v. *Board of Review,* 5 Utah 2d 87, 296 P.2d 983.

Section 212 makes an exception to the definition of employment contained in section 206. So far as material here, section 212 provides that service performed by an individual for an employing unit shall be deemed to be employment unless and until proved in a proceeding where the issue is involved that "(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact." Ill. Rev. Stat. 1955, chap. 48, par. 322.

The facts fail to show that the drivers were free from control or direction over the performance of such services. In the *Parks case* the company by its contracts expressly renounced any control, direction or influence over the drivers; in the present case the written agreement between the Company and the drivers expressly provides that the

driver will abide by any and all operating rules and regulations of the Company. And quite apart from the agreement the facts disclose elements of control wholly absent in the *Parks case*. The Company would, from time to time, specify gas stations from which gas was to be taken. The drivers were forbidden to use the cabs otherwise than in the Company's business. Within the maximum fixed by ordinance, the Company fixed the rates to be charged. Whether the drivers were required to abide by these rates or not, the evidence shows that they did abide by them. They reported their destinations and they expected to be told what rates to collect. Plaintiffs contend, however, that the most essential factor of control, that over the amount of the drivers' earnings, is missing. It is true that the taxicabs were not equipped with meters but the mere fact that the system employed by the plaintiffs may have allowed a certain leeway for dishonesty does not demonstrate an absence of control. Gas consumption and the presence of a radio in each cab are important factors of control at this point.

The plaintiffs correctly point out that subparagraph A of section 212 of the act does not contemplate that any control, however slight, will satisfy the statutory definition of employment. The question is one of degree. (*Schatz, Pollack Woolen Co.* v. *Murphy,* 384 Ill. 218.) As to the *quantum* of control which will result in a failure to establish the exception of section 212, this court has several times stated that the existence of general control or of the right to general control is sufficient even though the details of the service are left to individual judgment. (*Ross* v. *Cummins,* 7 Ill.2d 595; *Murphy* v. *Daumit,* 387 Ill. 406.) In the present case there was not only general control, but extensive control over details as well.

Findings of fact of the Director of Labor should not be disturbed unless against the manifest weight of the evidence. (*Mohler and Pratt* v. *Department of Labor,* 409

Ill. 79; *Outboard Marine and Manufacturing Co.* v. *Gordon,* 403 Ill. 523; *Local No. 658* v. *Brown Shoe Co.* 403 Ill. 484.) In the present case the Director's determination is entitled to finality, unless shown to be against the manifest weight of the evidence. No such showing has been made.

The judgments of the circuit court of Madison County are reversed and the decisions of the Director of Labor are confirmed.

*Judgments reversed; decisions confirmed.*