NATIONAL SERVICE LINES, INC. OF NEW JERSEY, Plaintiff-Appellant, v. JIM EDGAR, Secretary of State, Defendant-Appellee.

Fourth District  No. 4—84—0465

Opinion filed January 7, 1985.

Gary L. Smith, of Douglas G. Brown, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case concerns contract motor carrier registration fees assessed by defendant, Jim Edgar, Secretary of State, State of Illinois (Secretary), against plaintiff, National Service Lines, Inc. of New Jersey (National), pursuant to the provisions of section 3—402.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 3—402.1). By the terms of that section, each interstate carrier operating in Illinois and otherwise subject to those terms is assessed a charge for its fleet of vehicles based on the size of the fleet, the weight of its vehicles, and the number of miles driven in Illinois in relation to the total number of miles driven by the fleet. This method of assessing registration

fees is referred to as the prorated method.

Following an audit of National, the Secretary notified National on November 5, 1982, that it owed additional sums for prorated fees for 1979, 1980, and 1981. National requested a hearing on the assessment and requested a refund for prorated fees it had paid for those years and for 1982. Following a hearing before a hearing officer, the Secretary (1) ordered National to pay all additional assessments for 1980 and 1981 but no additional assessments for 1979, and (2) denied National's request for refund for all years. On administrative review in the circuit court of Sangamon County, that court entered an order on June 14, 1984, reversing the Secretary's denial of a refund for the year 1979, but otherwise affirming the Secretary's determination.

National has appealed and the Secretary originally cross-appealed, but has since voluntarily dismissed the cross-appeal. Thus, we must determine on appeal whether the Secretary erred (1) in imposing additional assessments for the years 1980 and 1981, and (2) denying National's request for refunds for the years 1980 through 1982. We affirm the decision of the circuit court upholding the decision of the Secretary on these issues.

The dispute in this case is based upon the existence of a reciprocity agreement entered into on February 2, 1971, between the States of Illinois and New Jersey pursuant to the terms of section 3—402(B)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 3—402(B)(3)). By the terms of the agreement, operators of fleets based in and licensed by one of the States would have to pay only minimal fees in order to operate in the other State. National had applied to the then Secretary in 1979 seeking to be registered under the 1971 reciprocity agreement, but was not permitted to do so. The evidence showed that National was qualified at that time for that type of registration. National did not subsequently apply for registration under the reciprocity agreement until late 1982, when the Secretary granted registration under the agreement for subsequent years.

National does not dispute the accuracy of the Secretary's calculations as to the amount of fees which National should have paid under the prorated system for the years 1980 through 1982. Rather, National contends that because of the erroneous ruling that it was not entitled in 1979 to register under the reciprocity agreement, the Secretary is estopped to assert that National must pay prorated fees for the subsequent years in question. National maintains that it would have applied under the reciprocity agreement in those years had it not been misled by the wrongful 1979 decision of the then Secretary. The Secretary responds that (1) National was not eligible for registra-

tion under the agreement in 1980 through 1982, (2) the doctrine of estoppel is not applicable, and (3) in any event, National's request for a refund was not timely.

Donald Helm, president of National, testified that in 1980, 1981, and 1982, National leased approximately 15 vehicles which were not licensed in New Jersey. Although, according to Helm's testimony, these vehicles accounted for less than one-tenth of one percent of the total revenue earned by National's fleet in those years, the use of these vehicles prevented National from being eligible for licensing under the reciprocity agreement during those years. Unless the Secretary is estopped to raise the issue of National's failure to comply with the requirements of the agreement, the use of these vehicles, although only a minimal deviation, bars National from (1) denying liability for the fees that should have been assessed for those years under the prorated method, and (2) obtaining refund for those fees paid under that method.

■ Only in extraordinary circumstances may estoppel be invoked against the State in its collection of the public revenue. (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 306 N.E.2d 7.) Estoppel cannot be invoked merely because the State sends out a notice of tax liability, accepts payment pursuant to the amount stated in the notice and then seeks to reexamine the taxpayer's records to determine if additional liability exists. (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.) In *Mr. Car Wash, Inc. v. Department of Revenue* (1975), 27 Ill. App. 3d 931, 327 N.E.2d 88, a previous State audit of a taxpayer had permitted the taxpayer to take a certain deduction in determining the amount of sales subject to retailers' occupation taxes. The taxpayer had relied on this ruling in taking deductions in other years. Nevertheless, the court held that the State was not estopped from denying the deductions in audits for subsequent years. The taxpayer was held to be liable for additional taxes, based upon a denial of the deductions, and for interest and penalties.

The extraordinary circumstances necessary to estop the government were found to exist in *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415. There, for more than 50 years, officials of the city of Chicago and State of Illinois had acquiesced in the claim of ownership by the defendant railroad company of highly valuable lakeside land and had permitted the railroad company to enter into many significant contracts and conveyances with reference to its claimed title to the land. The governmental units were estopped from claiming title to the land. In *Gannaway v. Barricklow* (1903),

203 Ill. 410, 67 N.E. 825, cited by National, an administrator who had paid a real estate tax bill for prior years' taxes purportedly owed by the decedent was determined to be entitled to a refund because the tax was never properly levied. However, the *Gannaway* court did not rely upon any theory of estoppel. Here, none of the issues before us concern the question of whether the Secretary had power to assess motor registration fees.

National asserts that the error of the then Secretary in 1979 in denying National's request to register under the reciprocity agreement estops the Secretary from claiming additional taxes under the prorated systems for the years in question and requires refund of those sums paid. National maintains that this is so even if, as we have ruled, the use of the leased vehicles made National ineligible for registration under the reciprocity agreement in the years in question. It contends that it leased the vehicles in reliance on the Secretary's determination that it was ineligible for registration under the agreement even when all of its vehicles used were registered in New Jersey.

We are aware of no precedent for giving this type of relief to a taxpayer under circumstances similar to those here. When registration under the agreement was denied in 1979, National had, by a series of letters, sent information to the office of the then Secretary showing that it was entitled to register in that matter but its application was denied. However, the finding of the hearing officer, approved by the Secretary, that there was no fraud or knowing intent upon the part of any governmental official to mislead involved in the denial of the 1979 application was supported by the evidence. National complains that it was not advised by the then Secretary of its right to seek review of the denial of the application. However, we know of no precedent for imposing such a duty on a governmental agency. The officials of National were presumably persons of at least ordinary business experience.

■ We find *Mr. Car Wash, Inc.* to be the case most analogous to the case at bar. There, the court did not permit the taxpayer to successfully assert the doctrine of estoppel against the State in a matter concerning the collection of its revenue. Here, the detriment to National in relying on a prior governmental ruling may be greater than that of the taxpayer in *Mr. Car Wash, Inc.* However, the situation here falls far short of presenting the extraordinary circumstances required by *Hickey.*

Because of our holding that (1) the Secretary was not estopped from assessing National under the prorated method for 1980, 1981, and 1982, and (2) assessments for those years under that method

were otherwise proper, we need not consider whether National's applications for refunds for the years in question were timely filed. We affirm the decision of the circuit court.

Affirmed.

McCULLOUGH and TRAPP, JJ., concur.