LEGAL PROCESS SERVICE, INC., Plaintiff-Appellee, v. SALLY WARD, Director, Department of Employment Security, Defendant-Appellant.

Second District   No. 2—87—0470

Opinion filed January 14, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Shawn W. Denney, Solicitors General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas D. Chase, of Elgin, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Director of the Illinois Department of Employment Security (Director), appeals from the judgment of the circuit court which reversed, as against the manifest weight of the evidence, an administrative decision which found the plaintiff, Legal Process Service, Inc. (LPS), an employer as defined by section 205 of the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, par. 300 *et seq.*) (Act), and assessed contributions and penalties due from LPS in the amount of $10,306.85 plus interest. On appeal, the defendant contends that the circuit court erred when it reversed the Director's original decision and determined that the individual legal process servers engaged by LPS are independent contractors under the three-part test outlined in the Act. For the reasons set forth below we reverse.

The following facts form the basis of this appeal. On February 8, 1984, the Illinois Department of Employment Security determined that LPS was an employer as defined by section 205 of the Act and assessed the amount of contributions and penalties due from LPS to be $12,164.38 plus interest. After LPS filed a protest, several hearings were held.

At the administrative hearing held on July 11, 1985, the president of LPS, Chapin Wood, testified that the plaintiff is a corporation engaged in the business of procuring legal papers for service of process and in this capacity mainly works for lawyers. In addition to serving process, he testified that LPS also does "skip tracing," which involves locating witnesses or litigants for lawyers. Wood explained that he solicits lawyers to obtain business and he is responsible for the daily operation of the business. He also stated that although the fees that LPS charges its customers are set by contract, LPS bases that rate on the statutory rate applicable to service by the sheriff. LPS does charge more than the statutory rate, however, when a particular service demands more work. To qualify as a process server, an individual must be of legal age and not a party to the suit for which he is serving process. In addition, a process server must be court-appointed.

Wood further testified that after he chooses the individual he wishes to engage as a process server, he matches that individual to the customer/attorney for assignment. Wood stated that it remains the customer's responsibility, however, to insure that the individual is appointed by the court. Once the court appoints the process server, LPS then contacts the individual and turns over the papers, either at the LPS office or through the mail. Wood also testified that he did not control or direct the process servers' activities in serving papers. Wood explained that remuneration paid to the process server is set by agreement between the individual and LPS, with payment contingent on proper service. Wood stated that occasionally a process server refuses to perform an assignment. Wood added that the process servers often contact LPS if they wish additional assignments. Finally, Wood stated that LPS issued paychecks monthly to individual process servers but does not withhold any deductions from the checks.

Several individual process servers who serve papers for LPS also testified. Richard Thomas, a high school principal, stated that he began serving papers to supplement his income four years ago. He stated that LPS does not require him to serve a set number of papers and he has rejected assignments as well as requested additional assignments. Thomas stated that, given the due date on the papers, he alone determines the specific time and method of service. Like all the other individual process servers who testified, Thomas stated that he never used LPS's offices in the performance of his service assignments.

Steve Randazzo, a State records analyst, testified that he began serving papers for LPS in 1980. He stated that he serves between 5 and 30 per week and receives his assignments through the mail.

Robert Wright, another process server, stated that he is employed at a newspaper and also has a seasonal rototilling business. He stated that LPS has no control over the method by which he serves his papers. Peter Liou, the fourth process server, testified similarly. Finally, Ross Green, a licensed private investigator and an LPS process server, stated that he chooses when and how to carry out his assignments.

On May 7, 1986, the Director issued a final administrative decision which affirmed the representative's finding that the process servers were not exempt as independent contractors under the Act. Specifically, the Director noted that while the process servers are similar in some respects to cab drivers or outside salesmen in that they receive payment in the form of a commission, they have no customer contact and they, in that respect, are similar to home workers or installers, positions which the Act considers "employment." The Director also found that as it is LPS which (1) interacts with the customer/attorney and (2) jobs out the work and pays remuneration, this remuneration is considered "wages." Finally, the Director determined that where the process servers used LPS as their sole source of process serving assignment work, the Act had not been complied with and the additional fact that these process servers all had other unrelated employment was irrelevant. On administrative review the circuit court reversed this decision as against the manifest weight of the evidence.

■ The sole issue in this appeal is whether the Director's decision, that the individual process servers engaged by LPS are employees, is against the manifest weight of the evidence. The trial court is empowered to review the decisions of the Director of employment security subject to the provisions of the Administrative Review Law of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 et seq.) The findings and conclusions of administrative agencies on questions of fact are considered *prima facie* true and correct, and, therefore, a reviewing court's determinations are limited to whether those findings are contrary to the manifest weight of the evidence. (*Graham v. Illinois Racing Board* (1986), 145 Ill. App. 3d 383, 389.) It is not the function of the court of review to reweigh the evidence before the administrative body or to make an independent determination of facts; rather, the reviewing court's sole function is to ascertain whether the final decision of the administrative agency is just and reasonable in view of the evidence presented. (*Markowski v. Edgar* (1986), 151 Ill. App. 3d 176, 180.) Wide latitude must be given to an administrative agency's exercise of discretion. (*Neff v. Miller* (1986),

146 Ill. App. 3d 395, 403.) However, if the administrative agency's findings lack evidentiary support in the record, the court of review must set them aside. *Pioneer Life Insurance Co. v. Woodard* (1987), 152 Ill. App. 3d 236, 245.

On appeal the defendant contends that the circuit court erred when it reversed the Director's decision in that Legal Process Services, Inc., failed to establish that the administrative agency's decision was contrary to the manifest weight of the evidence. Specifically, the defendant maintains that the Director correctly determined that process servers are employees and not independent contractors under section 212 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 322).

■ The court has held that the Act is not a taxing act, but rather was passed to alleviate the perils of unemployment under the State's police powers and should, therefore, receive a liberal construction. (*Eutectic Welding Alloys Corp. v. Rauch* (1953), 1 Ill. 2d 328, 332.) Section 206 of the Act defines "employment" as "any service *** performed by an individual for an employing unit." (Ill. Rev. Stat. 1985, ch. 48, par. 316; see *Ross v. Cummins* (1956), 7 Ill. 2d 595, 597.) Section 212 of the Act provides an exemption from the application of the Act for independent contractors. The common law definition of independent contractor does not control the application of the Act. (*Parks Cab Co. v. Annunzio* (1952), 412 Ill. 549, 551-52.) Section 212 (Ill. Rev. Stat. 1985, ch. 48, par. 322) provides that service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless it is proved: (1) that such individual is free from control over the performance of such services, both under his contract and in fact; and (2) that such service is either (a) outside the usual course of the business for which such service is performed or (b) that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (3) that such individual is engaged in an independently established trade, occupation, profession, or business.

■ We note that these requirements are conjunctive, and that if an individual performs services for an employing unit, he is an employee under the Act unless he is able to prove all three of these requirements. (*Ross v. Cummins* (1956), 7 Ill. 2d 595, 597; *A. George Miller, Inc. v. Murphy* (1942), 379 Ill. 524, 527.) We have examined the case law cited by both parties and observe that many times, although the courts have discussed the failure of the owner to prove all three requirements, on closer review, the owner, in fact, failed to prove only one. To illustrate, in *Spahn v. Department of Labor* (1962),

25 Ill. 2d 482, the court determined that the music teachers at a private school failed to satisfy all three of the requirements of section 212 and were, therefore, employees, despite the fact that these teachers gave lessons to private students *outside* of the school, could determine their own hours, could refuse to teach a student, were not required to follow a prescribed course of study, need not submit progress reports, and could even charge more than the minimum rate. Certainly, the facts in *Spahn* demonstrate that the owner had little control over the teachers' work. In that *case*, however, the court did not highlight the control issue. Rather, the court noted that while many of the teachers were independently employed as public school teachers and, in that respect were similar to independent contractors, they were, in fact, *largely dependent* upon the owner of the school for private students. The owner, thus, had failed to satisfy the last of the three requirements, namely, that the individual was engaged in an independent trade or business.

Similarly, in the present case we need not discuss the first requirement of the Act, namely, the issue of LPS's control over the individual process servers, as it is our opinion that the evidence clearly demonstrates that LPS failed to prove the remaining two requirements.

■■ The second requirement is that the service provided is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed. (*Hart v. Johnson* (1979), 68 Ill. App. 3d 968, 975.) It is not disputed that the services occurred outside LPS's place of business, its offices. We agree with the Director, however, that LPS's business includes serving writs and, in turn, the process servers are engaged by LPS to effectuate that business purpose. *Cf. Schatz, Pollack Woolen Co. v. Murphy* (1943), 384 Ill. 218 (window washing held outside of the usual course of woolen factory business).

In this regard we find LPS's reliance on *Parks Cab Co. v. Annunzio* (1952), 412 Ill. 549, wholly misplaced. In the particular facts of that case, the plaintiff taxicab company merely owned the licenses which it rented to taxicab owners by the week. The taxicabs were not painted or decorated in any uniform manner, and the owners were free to hire substitute drivers. Furthermore, the company did not maintain a call box, took no customer calls, and did not know the amount of money each cab took in. The evidence also demonstrated that the drivers were free to operate either on a meter or "jitney system" as they wished. In concluding that the drivers performed no ser-

vices for the company, the court stated that in none of the prior decisions regarding the status of taxicab drivers under unemployment compensation acts has the alleged employer "been so completely divorced from the operation of taxicabs as here." (412 Ill. at 554.) We are constrained to disagree with LPS that the process servers perform no service for the plaintiff and that LPS's business is solely "to gather papers." In our opinion the evidence in the present case demonstrates a far stronger relationship than merely that of licensor/licensee.

■ We also agree that the process servers failed to meet the third requirement, namely, that they are engaged in an individually established trade, occupation, profession, or business. In order to qualify for the third condition set forth for exemption under section 212, the individual performing the service must have a proprietary interest in such business to the extent of being able to operate that business without disturbance from any other person or of being the owner of an enterprise which he could sell or give away. *Murphy v. Daumit* (1944), 387 Ill. 406, 417.

In the present case three process servers testified. All but one testified that they only served papers for LPS, and none testified they engaged in an independent process serving business. In our opinion, because those individuals were largely dependent on LPS for process serving income, the condition of independent enterprise has not been satisfied. *Spahn v. Department of Labor* (1962), 25 Ill. 2d 482, 489. Compare *Schatz, Pollack Woolen Co. v. Murphy* (1943), 384 Ill. 218; *Beth Weber, Inc. v. Murphy* (1945), 389 Ill. 60 (court determined in both cases that individual was engaged in independently established trade where the individual performed services for the owner but performed the same service for several other customers as well).

■ The findings of the Director are *prima facie* correct and should not be disturbed unless contrary to the manifest weight of the evidence. (*Spahn v. Department of Labor* (1962), 25 Ill. 2d 482, 490.) We have carefully considered the record in this case as well as the case law, and it is our opinion that the lower court erred when it reversed the administrative decision. Accordingly the judgment of the circuit court is reversed; the decision of the Director is confirmed, and the assessments are reinstated.

Trial court reversed; decision of Director confirmed.

HOPF and INGLIS, JJ., concur.