FARMERS INSURANCE EXCHANGE *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellants (Johnnie T. Leithoff, Defendant).

Second District  No. 2—88—1254

Opinion filed August 8, 1989.—Rehearing denied August 28, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Diane Curry Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellants.

Joseph C. Loran, Patrick M. Kinnally, and Robert M. Foote, all of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Defendants, the Department of Employment Security, Board of Review (Board), and the Department of Labor (Department), appeal from the judgment of the circuit court of Kane County which reversed the Board's decision finding claimant, Johnnie T. Leithoff, eligible for unemployment insurance benefits. On appeal, defendants contend that the Board correctly determined that (1) claimant was an employee

and not an independent contractor; (2) claimant did not voluntarily leave his job without "good cause"; and (3) claimant was not paid solely by commission and, as such, an exclusion from benefits would not apply to him. We reverse.

In June 1983, plaintiff, Farmers Insurance Exchange (Farmers), hired claimant, a licensed insurance agent, to work as a part-time insurance agent. In November 1983, after claimant successfully completed Farmers' training program, he signed an "appointment agreement" (agreement) and became a full-time agent. The agreement provided that Farmers would pay claimant a commission based on the sale of insurance policies. At the same time, claimant entered into a "guaranteed income plan" (plan) with Farmers. The plan provided that Farmers would guarantee claimant an income of $1,300 per month, provided that claimant met certain sales production requirements. The plan was set up to cover claimant in those months in which claimant's commissions totalled less than $1,300. In such a situation, Farmers would provide claimant with the difference between his actual commissions and $1,300. However, claimant would have to reimburse Farmers 50% of any amounts advanced to him under the plan.

Claimant set up an office in his home. He furnished the office, bought supplies and paid all utility bills without reimbursement from Farmers. Farmers did reimburse claimant for 50% of the cost of placing an advertisement in the local telephone book. In addition, Farmers supplied claimant with insurance applications and forms. Claimant's business card identified him as an agent for Farmers.

Farmers did not regulate the number of hours claimant would work, but did require him to meet with the district sales manager on a weekly basis. Claimant was also obligated to submit all applications for insurance to Farmers, thus giving Farmers the opportunity to accept or reject any particular application. Claimant was permitted to submit an application to other insurance companies only if Farmers declined the opportunity to issue a policy.

In February 1984, Farmers terminated the income plan because claimant failed to maintain his sales quota. Claimant requested that he be allowed to return to part-time status with Farmers. Farmers denied claimant's request in a letter in which the district sales manager wrote:

"I checked with the Region as to whether we would allow you to go to a part-time contract, they said no.

Therefore it appears logical to me for you to send me a letter of resignation and I'll stop by and pick up your manual,

files and etc.

Unless something has changed favorably in your production in the last few weeks, I would not recommend that you attend the district meeting Wed. I'll be waiting to hear from you. Regards, Duane.

P.S. I am sincerely sorry that this letter doesn't have better news in it."

Shortly thereafter, claimant resigned and filed for unemployment insurance benefits. The claims adjustor determined that claimant was eligible for benefits. Farmers challenged the adjustor's decision, and three administrative hearings were held. Following the third hearing, the hearing referee issued his written findings agreeing with the adjustor, stating:

"Here, the claimant's placing of business was controlled by the company. The claimant was not free to place business with other companies until he had first offered it to this company. The company had control over the acceptance or refusal of the contracts.

Also, the terms of his contract obligated him to make a certain number of client contacts each week. This was at the direction of the company.

This being the case, it cannot be said that the claimant was free from control.

Therefore, the Referee finds that the claimant was 'in employment' and that the exclusion under Section 212 of the Act does not apply.

In regards to the separation from work, it was the employer who was the moving party. The employer stopped making the advances and, in effect, forced the claimant to resign.

In these circumstances, it must be concluded that the claimant was discharged. He was discharged for failing to meet the employer's expectations.

A failure to meet an employer's production standards is not, by itself, misconduct. In this case, no evidence has been established to show that the claimant [sic] failure to meet his quota was due to any intentional or willful neglect of his job responsibilities.

Therefore, the Referee finds that the claimant was discharged for reasons other than misconduct.

* * *

The determination is affirmed."

On January 12, 1988, the Board affirmed the referee's decision. On

February 16, 1988, Farmers filed a complaint for administrative review in the circuit court of Kane County to review the Board's decision. On November 22, 1988, the circuit court reversed the Board's decision. This appeal followed.

■■ Defendants contend on appeal that the Board correctly determined that claimant was "in employment" and not subject to any exclusion under "An Act in relation to a system of unemployment insurance" (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 300 *et seq.*). At the outset, we note that the findings of an administrative agency on factual questions are *prima facie* true and correct and will not be disturbed on appeal unless they are contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110; *Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 576-77; *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 189.) It is not the reviewing court's function to make independent determinations on questions of fact; rather, the court's sole function is to determine whether the administrative agency's final decision was just and reasonable. (*Legal Process Service, Inc. v. Ward* (1988), 165 Ill. App. 3d 83, 86; *Markowski v. Edgar* (1986), 151 Ill. App. 3d 176, 180.) The Act should be liberally construed for the benefit of the unemployed worker. *Davis v. Board of Review of Department of Labor* (1984), 125 Ill. App. 3d 67, 72.

■■ ■ Defendants first contend that the Board correctly determined that claimant was an employee and not an independent contractor for purposes of the Act. Farmers disagrees, contending that claimant satisfied each element of the "independent contractor" test contained in section 212 of the Act. (Ill. Rev. Stat. 1987, ch. 48, par. 322.) Section 212 of the Act provides:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that—

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." (Ill. Rev.

Stat. 1987, ch. 48, par. 322.)

All three conditions must be met before a claimant is considered to be an independent contractor, and hence not eligible for benefits, under the Act. (*Bennett v. Department of Employment Security* (1988), 175 Ill. App. 3d 793, 796.) The party claiming an independent contractor exemption is held to a strict burden of proof. (*Griffitts Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 104.) In addition, the common-law definition of independent contractor, along with the concept of master and servant, does not control under the Act. (*Spahn v. Department of Labor* (1962), 25 Ill. 2d 482, 486; *Legal Process Service*, 165 Ill. App. 3d at 87.) The statutory definition of employee is a broad definition and includes relationships not ordinarily considered to constitute employment at common law. *Spahn*, 25 Ill. 2d at 486; *Parks Cab Co. v. Annunzio* (1952), 412 Ill. 549, 551-52.

■ The first requirement set forth in section 212 of the Act is that the claimant must be free from control over his performance. General control is all that is necessary, and the mere existence of such general control will make the claimant an employee, even though details of an assignment may be left to the claimant's judgment. *Stauffer Reducing, Inc. v. Cummins* (1962), 23 Ill. 2d 567, 569; *Bennett*, 175 Ill. App. 3d at 797; *Hart v. Johnson* (1979), 68 Ill. App. 3d 968, 975.

In the case at bar, Farmers argues that claimant was "free from control" based on the specific language in claimant's contract with Farmers. The contract stated:

"[T]he Agent [claimant] is an independent contractor for all purposes.

The time to be expended by the Agent is solely within the Agent's discretion, and the persons to be solicited and the area wherein solicitation shall be conducted is at the election of the Agent.

The Agent shall, as an independent contractor, exercise sole right to determine the time, place and manner in which the objectives of this Agreement are carried out ***."

In addition, Farmers contends that consistent with the contract, it in fact exercised no control over claimant. Farmers asserts that it did not control claimant's hours, contacts, choice of office location, equipment, and did not impose a geographical limitation on his sales territory. Furthermore, Farmers states that it allowed claimant to write insurance policies for other insurance companies.

Defendants disagree, instead contending that Farmers exercised control over claimant by requiring claimant to give Farmers the right

to accept or reject all policies claimant wrote. In addition, defendants assert that Farmers set up production requirements and quotas in order to maintain claimant's loan guarantee. Defendants also point out that Farmers exercised control over claimant by denying claimant's request to work on a part-time basis.

■■ Initially, we note that the designation and terminology used by the parties in the contract are not controlling on this issue. (*Griffitts Construction*, 76 Ill. 2d at 104.) Rather, our inquiry is directed to the actual relationship, and not to the alleged relationship, that the parties in fact had. (76 Ill. 2d at 104-05.) Thus, simply because Farmers designated claimant as an independent contractor in the contract does not control our disposition of this issue.

■■ We believe that the present case is an example of general control. Claimant was not free to write insurance policies for any company he desired, but instead had to give Farmers the opportunity to accept or reject any policy claimant wrote. It was only after Farmers rejected a policy that claimant could do business with another insurance company. Farmers also declined claimant's request to work part-time, presumably because it had determined that it was "very hard to provide professional service if you're not devoting 100% of your efforts to the insurance business."

In addition, Farmers set up a sales quota and production requirements for claimant to maintain. Claimant was required to contact at least 75 potential clients each week in order to receive the loan guarantee. While Farmers argues that the income plan and employment agreement were independent of each other, we nevertheless believe that the quotas and production requirements are indicia of general control. This is especially true given that Farmers set a specific minimum number of prospective clients for claimant to contact each week. Therefore, we conclude that the Board's determination as to the first element is not against the manifest weight of the evidence.

Under section 212, Farmers was required to satisfy each of the three elements of the "independent contractor" test. Because we conclude that Farmers did not prove the first element, we need not consider whether Farmers has met the other two conditions for an exemption. See Ill. Rev. Stat. 1987, ch. 48, par. 322; *Griffitts Construction*, 76 Ill. 2d at 105.

■■ Having determined that claimant is an employee for purposes of the Act, we must next decide whether claimant voluntarily left his job without good cause. Section 601(A) of the Act provides, in pertinent part:

"An individual shall be ineligible for benefits for the week in

which he has left work voluntarily without good cause attributable to the employing unit ***." (Ill. Rev. Stat. 1987, ch. 48, par. 431(A).)

The provisions of this section are subject to five exceptions (Ill. Rev. Stat. 1987, ch. 48, par. 431(B)), none of which are applicable in the present case. The statute does not define "good cause," but courts have defined the term as "such cause [which] justifies an employee in voluntarily departing the ranks of the employed and in joining the ranks of the unemployed." (*Burke v. Board of Review, Department of Labor* (1985), 132 Ill. App. 3d 1094, 1101; see also *Popoff*, 144 Ill. App. 3d at 578.) In addition, "good cause" may be found in the claimant's unique personal circumstances and should be judged by the reasonableness of the claimant's actions in his or her own particular case. (*Eddings v. Department of Labor* (1986), 146 Ill. App. 3d 62, 66-67.) Whether a particular case satisfies the "good cause" test is ordinarily a factual matter for the Board to decide. *Burke*, 132 Ill. App. 3d at 1100; *Thompson v. Board of Review, Department of Labor* (1983), 120 Ill. App. 3d 1, 4.

In the present case, the hearing referee specifically found that claimant did not voluntarily leave his job without good cause. The referee stated:

"The employer stopped making the advances and, in effect, forced the claimant to resign.

In these circumstances, it must be concluded that the claimant was discharged."

The Board agreed with the referee and affirmed his decision. We do not believe that the Board's decision was against the manifest weight of the evidence. We make this determination by noting that a substantial unilateral change in employment may render a job unsuitable and thus entitle the claimant to benefits. (See *Eddings*, 146 Ill. App. 3d at 67 (uncertain employment status coupled with 40% pay reduction was sufficient to satisfy good cause); *Komarec v. Illinois Department of Labor* (1986), 144 Ill. App. 3d 1105, 1111-12 (substantial salary reduction rendered job unsuitable); *Mangan v. Bernardi* (1985), 131 Ill. App. 3d 1081, 1084-85 (wage reduction and loss of fringe benefits, including medical insurance, sufficient to satisfy good cause); *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 705, 709 (30% to 47% reduction in pay good cause for leaving position).) With these considerations in mind, we believe that the Board was correct when it determined that the elimination of the income guarantee was a substantial unilateral change in claimant's employment which entitled

claimant to unemployment insurance benefits.

■■ Defendants' last contention on appeal is that section 228 of the Act does not apply in this case because claimant was not solely paid by commission. Section 228 states:

"The term 'employment' shall not include services performed by an individual as an insurance agent or insurance solicitor, if all such services performed by such individual are performed for remuneration solely by way of commission." (Ill. Rev. Stat. 1987, ch. 48, par. 338.)

Both parties agree that claimant was an insurance agent within the context of the Act. However, they disagree as to whether claimant was paid solely by commission. Farmers argues that the loan payments directly depended on the work performed and subsequent commissions earned, thus satisfying the requirement that the agent be paid solely by commission. Farmers also argues that claimant was required to repay the loan such that claimant was actually paid solely by commission. The Board disagrees, arguing that claimant was only required to repay Farmers 50% of the income guarantee, while being allowed to keep the other 50% of the guarantee even if no sales were made. Thus, the Board argues that 50% of the income guarantee constituted income other than by way of commission such that section 228 of the Act does not apply.

In *Commonwealth Life & Accident Insurance Co. v. Board of Review of Department of Labor* (1953), 414 Ill. 475, the court was faced with a situation in which an insurance agent received a 20% commission on sales of insurance, with a minimum earnings guarantee of $45 per week. The insurance company guaranteed the agent $45 per week whether or not the agent sold any new insurance policies during that week. The court held that the presence of the earnings guarantee defeated the insurance company's claim that the agent was paid solely by commission. (*Commonwealth Insurance*, 414 Ill. at 485.) The court made this ruling after determining that "solely" was synonymous with "exclusive," and defining "commission" as "compensation paid for work measured by results achieved." 414 Ill. at 484.

■■ We believe that the *Commonwealth Insurance* decision supports the Board's determination that claimant was not paid solely by commission. We do not agree with Farmers' contention that the fact that claimant's guaranteed income varied from month to month distinguishes this case from *Commonwealth Insurance*. While it is true that the agent in *Commonwealth Insurance* received a fixed sum per week, we believe that in both cases these amounts were remuneration other than commission.

We also disagree with Farmers' contention that claimant was required to pay back the loan upon the termination of his agency agreement. A reading of the loan guarantee reveals that claimant was required to fully pay back the unpaid balance in the loan account. However, this amount does not include 50% of the loan that claimant was never required to pay back. The fact that claimant received 50% of the income guarantee without an obligation to repay Farmers constitutes remuneration other than commission. Thus, the exception found in section 228 of the Act is inapplicable to the unique circumstances in this case.

Because the findings of the Board were not contrary to the manifest weight of the evidence, the trial court erred when it reversed the Board's decision. Accordingly, the judgment of the circuit court of Kane County is reversed.

Reversed.

UNVERZAGT, P.J., and NASH, J., concur.