JACK BRADLEY, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants.

Third District No. 3—89—0613

Opinion filed October 23, 1990.

HEIPLE, P.J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Linda J. Hay and Jennifer Keller,. Assistant Attorneys General, of Chicago, of counsel), for appellant.

Edmonds & Laukitis, Ltd., of Chillicothe (Richard V. Laukitis, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Defendants, the Illinois Department of Employment Security (IDES) and Sally A. Ward, Director of Employment Security (Director), appeal from a circuit court decision reversing a determination made by the Director that plaintiff, Jack Bradley, Inc. (Bradley), owes IDES $13,898.16 plus interest in unpaid unemployment contributions.

Bradley, located in Chillicothe, Illinois, is engaged in the business of advertising and public relations. One of Bradley's regular activities is that of intermediary between people who work as "food demonstrators" and food vendors and retailers that require their services.

At issue in this case is the status of these demonstrators with respect to the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 300). IDES contends these demonstrators are employees and therefore subject to unemployment contributions by Bradley. Bradley asserts they are independent contractors that are exempt from contribution under section 212 of the Act. Ill. Rev. Stat. 1989, ch. 48, par. 322.

On December 2, 1986, and April 9, 1987, the Director of IDES served Bradley with notices of determinations and assessments and demand for payment regarding Bradley's demonstrators. Bradley filed protests and a petition for a hearing.

On August 26, 1987, a hearing was held on the notices of determinations and assessments before the Director's representative, Irwin Racine. Bradley presented exhibits and testimony from its vice-president, Mark Bradley, its auditor, Steven Cushing, and Betty Thomas, a demonstrator. IDES offered no oral testimony. The hearing record is the source of the facts set out below.

The question of whether Bradley's demonstrators were employees first arose in 1983, when Stella Roberson, a demonstrator that had been referred by Bradley, filed a claim with IDES seeking unemployment compensation. Bradley protested Roberson's right to compensation on the theory that she was an independent contractor.

On September 15, 1983, a meeting was held to resolve this issue. Attending the meeting for IDES were auditor Jim Kelly and his supervisor, Lee Pickens. Representing Bradley at the meeting were

Steven Cushing, his associate, Wayne Holloway, Mark Bradley and Jack Bradley, the president of Jack Bradley, Inc.

At that meeting, Kelly argued that the demonstrators were employees, while Cushing argued on behalf of Bradley that they were independent contractors. After listening to the arguments, Pickens reached a decision that demonstrators who did not have signed contracts with Bradley would be subject to unemployment contributions; he also decided that demonstrators who had signed contracts claiming status as independent contractors would not be subject to contributions.

Bradley acquiesced in this result and was instructed to compile a list of demonstrators that did not have signed contracts so Kelly could determine the amount of tax owed. Kelly was then to go to Cushing's office and examine these lists but apparently never did.

In July 1985, Kelly's replacement, Suzanne Faulkner, contacted Cushing regarding Bradley's demonstrators. Cushing informed her of the agreement reached in September 1983, described above, and offered to make available records showing the amount paid to demonstrators without signed contracts. After checking with her supervisors, Faulkner asserted that no agreement had been reached in 1983 and requested all of Bradley's records.

Bradley has approximately 200 to 250 food demonstrators listed with it. Demonstrators make an average of $500 to $1,000 per year. For the period from June 30, 1983, to March 31, 1987, the total compensation paid to the demonstrators was about $650,000. Virtually all the demonstration work takes place on weekends at grocery stores and none of the demonstrations are at Bradley's place of business. Bradley issues 1099 forms to the demonstrators for their tax purposes, rather than W-2 forms.

Demonstrators that are listed with Bradley sign a nonexclusive form contract. Although some demonstrators worked without contracts in 1983, by 1987 demonstrators listed with Bradley had signed this contract. The contract specifically provides that the demonstrator is not an employee but an independent contractor. Mark Bradley testified that based on his personal knowledge and information from the president of the National Association of Demonstrating Companies, this is the standard practice throughout the industry.

A demonstrator that contracts with Bradley may also receive referrals from other companies as well as being contacted directly by food vendors to render services.

Mark Bradley and Betty Thomas testified as to the process of setting up a demonstration. First, the food vendor or retailer contacts

Bradley and informs it of the dates of the demonstration, the starting and ending times, and the product to be demonstrated. Bradley then begins calling demonstrators from its list in search of someone to perform the work.

When a demonstrator is contacted by Bradley, she has complete discretion in deciding whether to accept the job. A demonstrator may be unavailable because of previous personal or business engagements. A demonstrator may refuse a job based on the location of the demonstration or her personal feelings about the product. A demonstrator that refuses a job is not penalized in anyway.

If a demonstrator accepts a job, the agreement is confirmed in writing and Bradley sends her a report form. Upon arrival at the store where the demonstration will take place, the demonstrator reports to the manager or department head responsible for the demonstration. This individual directs the demonstrator on where to set up. Instructions on how to conduct the demonstration are supplied by the food vendor or the store itself. Companies such as Tony's Pizza and Tombstone Pizza provide demonstrators with detailed instructions on how to properly demonstrate their products, including what to say, what to wear and how to act.

The equipment for the demonstration is provided by the food vendor, the retailer, or the demonstrator herself. In addition to passing out samples of the product, a demonstrator may be responsible for taking inventory and maintaining an adequate shelf supply of the product. If the product being demonstrated sells out, the store may instruct the demonstrator to distribute samples of another product. At the end of the demonstration, the demonstrator is responsible for cleaning up and removing all equipment from the area.

Bradley does not furnish demonstrators with equipment or supplies, or any information on the products demonstrated. Bradley does not train demonstrators or supervise their work in any way.

Normally a demonstrator does not fill out a formal time sheet, although one store, Kroger, made the demonstrators punch in and out. Usually the store manager verifies the demonstrator's report form and that form is then sent back to Bradley. After receiving this report, Bradley sends a check to the demonstrator for the contract amount. A demonstrator is paid the full contract amount even if the store runs out of supplies early and the demonstrator does not work the full amount of hours scheduled.

There is some question as to how a demonstrator's rate of pay is determined. The contract submitted as petitioner's exhibit No. 1 indicates a standard rate of pay for all demonstrations arranged by Brad-

ley. This particular contract pertains to demonstrator Betty Thomas and specifies a wage rate of $36 per eight-hour day. However, Thomas testified before IDES that the amount she received depended on how much the food vendor or retailer paid. In either case, she apparently had little input in deciding her rate of pay, a characteristic usually associated with an employee, not an independent contractor.

At the administrative level the Director found that food demonstrators hired by Bradley were employees, not independent contractors, and therefore not exempt under section 212 of the Unemployment Insurance Act. (Ill. Rev. Stat. 1989, ch. 48, par. 322.) The Director also found that IDES was not estopped from assessing unpaid contributions and assessed Bradley $13,898.16 plus interest. On August 25, 1989, the circuit court reversed the Director's decision as being contrary to the manifest weight of the evidence.

IDES contends on appeal that: (1) Bradley failed to prove the demonstrators met all the requirements of section 212 and therefore they are employees for the purposes of the Unemployment Insurance Act; (2) IDES was not estopped from assessing unemployment contributions by virtue of an oral statement made by an IDES auditor.

■ The purpose of the Unemployment Insurance Act is to provide economic security to those that are involuntarily unemployed. (Ill. Rev. Stat. 1989, ch. 48, par. 300.) Section 212 sets out the requirements for a specific exemption from the Act for people who earn a living as independent contractors. In order for Bradley's food demonstrators to be characterized as independent contractors all three requirements of section 212 must be satisfied. (Ill. Rev. Stat. 1989, ch. 48, par. 322.) Section 212 reads as follows:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that—

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession or business." Ill. Rev. Stat. 1989, ch. 48, par. 322.

██ On administrative review of any agency decision, the findings of fact shall be held to be *prima facie* true, and the decision should not be reversed unless it is contrary to the manifest weight of evidence. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Farmers Insurance Exchange v. Department of Labor* (1989), 186 Ill. App. 3d 493, 542 N.E.2d 538.) The court's sole function on review of an administrative decision is to determine whether the decision was just and reasonable. *Farmers*, 186 Ill. App. 3d at 498, 542 N.E.2d at 540.

██ The Unemployment Insurance Act is to be liberally construed for the benefit of the unemployed worker. (*Griffitts Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 390 N.E.2d 333.) Any inquiry under section 212 is directed towards the actual relationship between the parties, and thus designations or terminology used by the parties is not controlling. (*Bennett v. Department of Employment Security* (1988), 175 Ill. App. 3d 793, 530 N.E.2d 541; *Farmers*, 186 Ill. App. 3d at 498, 542 N.E.2d at 540.) The common-law definition of independent contractor does not control under the Act, and "employee" is defined broadly; it includes relationships not ordinarily considered to be "employment" at common law. *Farmers*, 186 Ill. App. 3d at 498-99, 542 N.E.2d at 541.

██ Under the Act, a worker is considered an employee until proven otherwise. Any party claiming an independent contractor exemption has a strict burden of proof. (*Farmers*, 186 Ill. App. 3d at 498, 542 N.E.2d at 540.) As section 212 is conjunctive, failure by the claiming party to satisfy its burden of proof on any of the three requirements must result in a decision for the other side.

Although this is a case of first impression in Illinois, a recent Missouri appellate case addressed a factual situation that was nearly identical. (*Sample & Sell, Inc. v. Labor & Industrial Relations Comm'n* (Mo. App. 1988), 764 S.W.2d 109.) The statutory requirements for independent contractor exemption in Missouri are identical to those in section 212. Mo. Ann. Stat. §288.034(5) (Vernon 1965).

In *Sample*, Missouri's Division of Employment Security and Labor and Industrial Relations Commission ruled that food demonstrators were employees, not independent contractors. The trial court reversed, but the appellate court in turn reversed the trial court and affirmed the administrative decision. *Sample*, 764 S.W.2d 109.

Sample and Sell, Inc., was a company that referred food demonstrators for demonstrating jobs, in the same way Bradley did here. The process was essentially the same. A vendor or retailer would call Sample, Sample would contact a demonstrator and the demonstrator would decide whether to take the job. Sample would then send a re-

port form to the demonstrator to be verified by the store manager and returned to Sample for payment. Sample did not supervise the demonstrators' activities or determine the times and places of demonstrations.

There were three differences from the case at bar. Sample supplied some of the equipment used in demonstrations. There was no written contract between the demonstrators and the company. No evidence was presented showing Sample's demonstrators ever worked directly for food vendors.

None of these facts distinguish *Sample*, however. The fact that *Sample* supplied some equipment had nothing to do with the basis for the court's ruling. Whether or not a written contract existed is of little importance because, as already pointed out, designations and terminology do not control under section 212. (*Bennett v. Department of Employment Security* (1988), 175 Ill. App. 3d 793, 530 N.E.2d 541; *Farmers*, 186 Ill. App. 3d at 498, 542 N.E.2d at 540.) Although Sample provided no evidence that demonstrators worked directly for food vendors, the evidence provided by Bradley with respect to this point was insufficient to satisfy its burden of proof.

■ We are persuaded by the *Sample* court's reasoning. The third requirement for independent contractor exemption set out in the above statute is especially lacking. The food demonstrators are not customarily engaged in an entrepreneurial enterprise and, therefore, are not "engaged in an independently established trade, occupation, profession or business." *Sample*, 764 S.W.2d at 112.

The *Sample* court reasoned that the requirement of having an independently established trade, occupation, profession or business was included to cover many persons who had freedom from detailed control by an employer but who nevertheless did not have the kind of independence which commonly rids the true entrepreneur of the risk of unemployment. (*Sample*, 764 S.W.2d at 112.) Thus, "the ultimate issue is whether the person performing the services was engaged in an entrepreneurial enterprise which enjoyed a degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services." *Sample*, 764 S.W.2d at 112.

■ The standard in Illinois for satisfying this requirement was outlined in *Murphy v. Daumit* (1944), 387 Ill. 406, 56 N.E.2d 800. The court said that subparagraph (c) required "an individual who has a proprietary interest in such business to the extent that he can operate same without hindrance" and is not dependent on another for employment. *Murphy*, 387 Ill. at 417, 56 N.E.2d at 805.

■ In this case the demonstrators did not enjoy such a degree of economic independence. Although there was evidence that demonstrators are contacted directly by food vendors sometimes, such contacts appear to make up only a very minute portion of a demonstrator's work. Betty Thomas testified that she had been contacted directly by Oscar Myer to do demonstration work in 1987 but could not remember any specific details. She mentioned no other food vendors that she had worked for directly. Bradley offered no other evidence tending to show that it was common for demonstrators to be contacted directly by food vendors. If food vendors regularly sought out demonstrators directly, there would be no reason for Bradley and other companies like it to exist.

Bradley has failed to prove that demonstrators who relied solely on direct contacts from food vendors would have steady employment. It was reasonable for the Director to find that Bradley and other such companies were necessary for the demonstrators' continued employment. The Director's decision that Bradley presented insufficient evidence of an independently established trade, occupation, profession or business must be upheld. The court's finding that the administrative decision was against the manifest weight of evidence is incorrect and must be overturned.

Our affirmance of the finding that demonstrators are employees for the purposes of the Unemployment Insurance Act does not extend the definition of "employee" for any other purpose. Nor does the decision here affect common law theories of agency or vicarious liability. (See *Joyce v. National Medical Registry, Inc.* (1988), 170 Ill. App. 3d 141, 524 N.E.2d 243 (where we approved a summary judgment determination that an employment service was not vicariously liable for the acts or omissions of a person supplied to a customer of the service).) The result we reach here means only that Bradley must pay tax in accordance with the provisions of the Unemployment Insurance Act; we do not suggest that Bradley was in error in issuing IRS forms 1099 rather than withholding for income tax purposes. For other purposes these food demonstrators may or may not be "employees."

IDES' second contention is that it was not estopped from assessing the unemployment contributions, the tax. Bradley asserts that an oral agreement was reached in 1983 between itself and IDES auditor Lee Pickens. Apparently, Jim Kelly, an IDES employee, was to return to Bradley's accountant's office and compute the tax owed on those demonstrators that worked under oral arrangements. Kelly failed to return but Bradley never followed up, hence no tax in any amount was paid. Some three years later all demonstrators had written agree-

ments reciting an independent contractor status on forms prepared by Bradley. In *Bennet* the court noted with approval the hearing officer's observation (*Bennet*, 175 Ill. App. 3d at 797, 530 N.E.2d at 544) "that in a regular independent contractor-employer relationship, the independent contractor provides the contract, not the employer."

 █ Aside from the circumstance that we doubt there would be an estoppel between private parties, there is a general rule against applying the principles of estoppel to a State agency, especially in cases involving the collection of public revenue. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415.) The doctrine is only applied when necessary to avoid fraud or injustice. (*Hickey*, 35 Ill. 2d at 449, 220 N.E.2d at 426.) Accordingly, the State is not estopped from collecting taxes by previous acts or conduct of its agents, including the failure to collect a tax legally due because of a mistake or misinformation on the part of agents. *National Service Lines, Inc. v. Edgar* (1985), 129 Ill. App. 3d 729, 473 N.E.2d 134.

Bradley has presented no persuasive authority for applying estoppel in this case. No fraud or injustice is present. The Director's decision in this case was supported by the evidence and should not have been disturbed on judicial review. The judgment of the circuit court of Peoria County is reversed.

Reversed.

STOUDER, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

The plaintiff, Jack Bradley, Inc., filed a complaint seeking judicial review of a decision of the Director of the Illinois Department of Employment Security (hereinafter Agency) which assessed the plaintiff $13,898.16 plus interest in unpaid unemployment contributions. The Agency decision was based on its finding that food demonstrators, who were contacted for jobs by the plaintiff, were employees of the plaintiff, not independent contractors, pursuant to section 212 of the Unemployment Insurance Act. (Ill. Rev. Stat. 1987, ch. 48, par. 322.) The trial court found that the Agency decision was manifestly erroneous and reversed. A majority of this court reverses the trial court decision, finding that the food demonstrators are not "engaged in an independently established trade, occupation, profession or business" as required by the third prong of the independent contractor exemption set forth under section 212. I

find that food demonstrators are independent contractors within the meaning of the statute and accordingly dissent.

Jack Bradley is engaged in the advertising and public relations business in Chillicothe, Illinois. As part of his business, Jack Bradley acts as a conduit between retail food stores and food demonstrators as to the availability of food demonstration work in retail establishments. The requests for food demonstrators' services are initiated by retailers and then Bradley contacts one of the approximately 200 to 250 food demonstrators that he has on a list. The food demonstrators are free to either accept or reject the job. Jack Bradley's contract with the demonstrators is entitled "Independent Contract Agreement" and provides in pertinent part that the food demonstrators "have sole control of the manner and means of performing" the job and are "responsible for supplying all equipment necessary for the performance" of the job. None of the demonstration work takes place at Bradley's place of business, and Bradley issues 1099 forms to the demonstrators for tax purposes, which are the forms which are normally issued to independent contractors. Bradley pays the demonstrators for the jobs performed, and Bradley receives approximately 20% of his total business from arranging jobs between the retailers and demonstrators. Betty Thomas, a food demonstrator, testified that she is an independent demonstration person and that she finds work either through the food vendors or Jack Bradley.

The independent contractor exemption in section 212 of the Unemployment Insurance Act applies when three criteria are met: (1) whether the individual is free from control; (2) whether the service is outside the usual course of business or is performed outside all of the places of business of the enterprise for which the service is performed; and (3) whether the individual is customarily engaged in an independently established trade, occupation, profession or business. (Ill. Rev. Stat. 1989, ch. 48, par. 322.) Here, there is no question that the demonstrators were free from Bradley's control and direction and that the demonstrations were performed outside all of the places of Bradley's business. Thus, the only question remaining is whether the food demonstrators were engaged in an independently established trade, occupation, profession or business.

The majority, relying on a Missouri appellate case with a similar factual situation, finds that this third requirement is lacking. (*Sample & Sell, Inc. v. Labor & Industrial Relations Comm'n* (Mo. App. 1988), 764 S.W.2d 109.) In *Sample*, the Missouri Appellate Court found that food demonstrators are not engaged in an independent

entrepreneurial enterprise, but are dependent upon other entities for employment. The reasoning of *Sample* is flawed and is not binding precedent in Illinois.

The definition of an "independent contractor" necessarily means that a person is contracting with another to perform a particular job. (Black's Law Dictionary 693 (5th ed. 1979).) While the common-law definition of an independent contractor does not control under the Unemployment Insurance Act (*Farmers Insurance Exchange v. Department of Labor* (1989), 186 Ill. App. 3d 493, 542 N.E.2d 538), neither the language of section 212 nor the case law interpreting the statute warrants the hollow definition given "independent contractors" by the majority holding. In the case at bar, the food demonstrators are not dependent on Jack Bradley for demonstration jobs but can obtain work from the food vendors directly or from other companies. Thus, under a commonsense reading of section 212(c), the food demonstrators are engaged in an independent occupation. Additionally, this case is factually distinct from the only Illinois case interpreting the third requirement of section 212. (*Legal Process Service, Inc. v. Ward* (1988), 165 Ill. App. 3d 83, 518 N.E.2d 768.) In *Ward*, Legal Process Service, Inc. (hereinafter LPS), hired persons to serve process for litigating attorneys. The *Ward* court found that these process servers were employees of LPS under section 212(c) because they engaged in no independent process serving other than pursuant to the directions of LPS, which engaged them. In the present case, the food demonstrators were free to, and did, perform their services independent of Jack Bradley, Inc.

Accordingly, I agree with the trial court that it was manifestly erroneous for the Illinois Department of Employment Security to find that the food demonstrators were employees rather than independent contractors under section 212. Therefore, I dissent.