O'HARE-MIDWAY LIMOUSINE SERVICE, INC., Plaintiff-Appellant, v. CRAWFORD J. BAKER *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—90—1714, 1—90—1821 cons.

Opinion filed July 10, 1992.

Michael A. Abramson, P.C., of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

O'Hare-Midway Limousine Service, Inc. (O'Hare-Midway), appeals the decision of the circuit court affirming the Illinois Department of Employment Security's determination that its chauffeurs were employees rather than independent contractors and, consequently, were covered for purposes of unemployment insurance contributions. For the reasons which follow, we affirm the judgment of the circuit court.

Joseph T. Wallon, Jr., and Crawford J. Baker worked as chauffeurs for O'Hare-Midway. On May 29, 1987, Wallon filed a claim for

benefits under the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 300 *et seq.*). Subsequently, a claims adjudicator found that O'Hare-Midway had paid Wallon wages for insured work; O'Hare-Midway appealed, and a referee affirmed the adjudicator's finding; O'Hare-Midway again appealed, and the Board of Review remanded the case to the referee so that a record of the hearing could be made; another hearing was held, and the referee again affirmed the adjudicator's finding; and, finally, on August 18, 1988, the Board of Review affirmed the decision of the referee. Baker's claim was filed on July 12, 1987. A claims adjudicator determined that he had been paid wages for insured work, and a referee and the Board of Review affirmed. On May 15, 1990, the circuit court heard appeals on both cases and affirmed the decisions of the Board of Review. These claims have been consolidated for appellate review.

The pertinent facts are as follows. Both Wallon and Baker leased limousines from O'Hare-Midway, which booked limousine reservations and dispatched drivers. Both Wallon and Baker operated under oral leasing agreements, whereby each received 40% of the fares collected (a commission percentage which was set by O'Hare-Midway and which was not negotiable). Both dressed in dark business suits, as prescribed by O'Hare-Midway. Both received instructions from O'Hare-Midway concerning radio usage, the dispatch system, and limousine driving. Both paid for gas, tolls, and car washes, while O'Hare-Midway paid for insurance, license fees, stickers, and oil changes. Both chauffeurs chose their own work schedules. While Baker kept detailed business records which itemized full passenger fares, his tips, and taxable income, Wallon kept no records. O'Hare-Midway also kept no records of the chauffeurs' earnings.

Based on the aforementioned facts, the claims adjudicator, the hearing's referee, the Board of Review, and the circuit court determined that Wallon and Baker were paid wages for insured work and were therefore entitled to unemployment compensation benefits. In our review of an agency's decision, the findings of fact are held to be *prima facie* true and correct, and the agency's decision should not be reversed unless it is contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1989, ch. 110, par. 3—101; *Farmers Insurance Exchange v. Department of Labor* (1989), 186 Ill. App. 3d 493, 498, 542 N.E.2d 538, 540 ("It is not the reviewing court's function to make independent determinations on questions of fact; rather, the court's sole function is to determine whether the administrative agency's final decision was just and reasonable").) Agency determinations on questions of law should be affirmed absent an abuse of discretion. (*City of Chi-*

*cago v. Illinois Local Labor Relations Board* (1988), 182 Ill. App. 3d 588, 536 N.E.2d 1219.) When the issue on review specifically involves the agency's interpretation of a statute that the agency is empowered to administer, the agency's interpretation should only be overturned if it is clearly erroneous. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219.

The instant case involves the defendants' interpretation of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 300 *et seq.*), the statute that the defendants are empowered to administer. The Act itself is to be liberally construed for the benefit of the unemployed worker. *Griffits Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 390 N.E. 2d 333.

In its appeal, O'Hare-Midway first alleges that Baker and Wallon's business of furnishing chauffeur services to passengers does not constitute employment under the Act. The Act defines employment as any service performed by an individual for an employing unit. (Ill. Rev. Stat. 1989, ch. 48, par. 316.) The Illinois Supreme Court has found that no services were rendered and therefore no employment relationship existed between cab drivers and a cab company, where the cab company leased cab licenses to cab drivers, held title to and carried insurance on the vehicles and maintained a garage for the cab driver while the drivers operated the cabs, paid for their expenses and gasoline, and paid the company $60 a week. (*Parks Cab Co. v. Annunzio* (1952), 412 Ill. 549, 107 N.E.2d 853.) These *Parks* cab drivers are readily distinguishable from the chauffeurs in the case at bar. While the cab drivers were free to pick up passengers wherever they chose, Wallon and Baker picked up customers who had "booked" limousine services with O'Hare-Midway. While the cab drivers paid a set weekly rate for their leases, Wallon and Baker paid a percentage of their commissions to Midway-O'Hare, thus establishing a financial interdependence, or a direct financial stake with the limousine company. (See *NLRB v. O'Hare-Midway Limousine Service, Inc.* (7th Cir. 1991), 924 F.2d 692 (in considering the employee-independent contractor issue, the Seventh Circuit stated that the decisive factor in the cab cases was the lack of any financial interdependence between the cab drivers and the taxicab companies).)[1] O'Hare-Midway also relies on the case of *Wallace v. Annunzio* (1952), 411 Ill. 172, 103 N.E.2d

---

[1] Additionally, the Seventh Circuit's decision involved the narrower common law principles of agency, which do not apply to the statutory provisions in the case at bar.

467, where the Illinois Supreme Court found that the relationship between associate attorneys and a law firm was really similar to a joint partnership, as the attorneys shared in the profits and losses and were really performing services for themselves. Again, the instant action is distinguishable, as the chauffeurs, although they did share a percentage of the commissions, were performing services for O'Hare-Midway (driving customers booked by the limousine service) and not for themselves.

■ O'Hare-Midway next argues that even if the furnishing of chauffeur services constitutes employment, Wallon and Baker are independent contractors, free from direction and control, and therefore uncovered by the provisions of the Act. The independent contractor exemption to the Unemployment Insurance Act provides as follows:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that—

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." (Ill. Rev. Stat. 1989, ch. 48, par. 322.)

All three conditions must be met before the exemption is allowed. (See *Farmers*, 186 Ill. App. 3d at 499, 542 N.E. 2d at 540.) Although there is no Illinois case law concerning the specific issue of whether limousine drivers are employees for unemployment insurance purposes, the Seventh Circuit Court of Appeals has decided this very same issue involving O'Hare-Midway. (See *NLRB v. O'Hare-Midway Limousine Service, Inc.* (7th Cir. 1991), 924 F.2d 692.) In its decision, the Seventh Circuit found that the issue centered on O'Hare-Midway's ability to control the employees, noting the rules regarding collection of fares and servicing of passengers, and the mandatory dress code.

■ Similarly, in the case at bar, we find that the chauffeurs were not free from O'Hare-Midway's general control. Although O'Hare-Midway argues that there was no uniform requirement, that the drivers were free to set their own hours, and that they could decline a

dispatch if they chose, such is not the case. The dark business suit and tie, mandated by O'Hare-Midway, was essentially a uniform requirement. Even though the drivers could set their own hours and decline customers, O'Hare-Midway retained the right to stop leasing the limousines, and admitted before the hearing officer that if calls were declined regularly, it would, in fact, terminate leasing arrangements. This indirect sanction is an important element of O'Hare-Midway's control. Furthermore, the commission percentage the drivers received was set by O'Hare-Midway and was not negotiable. Even though O'Hare-Midway considered the drivers to be independent contractors, and consequently made no deductions for social security, Federal income tax or State income tax, and even though the drivers paid for their own gas, tolls, and car washes, such evidence does not outweigh the fact that O'Hare-Midway retained substantial control of the chauffeurs at issue. O'Hare-Midway also contends that it is a provider of dispatch, booking, and billing services, that it offers these services from its Wheeling office, and that the chauffeurs performed their driving services outside O'Hare-Midway's usual course of business. While it is true that the driving did not take place at the Wheeling office, the chauffeurs picked up and returned their limousines there. Furthermore, we cannot conclude that the usual course of a limousine dispatching service is limited to office space. Rather, we find that because the drivers represented the interests of O'Hare-Midway whenever they picked up passengers, the usual course of business was on the roadways traveled.

■ Finally,[2] O'Hare-Midway maintains that the chauffeurs were engaged in an independent business and therefore were not employees. One of the characteristics of an independent business is the owner's proprietary interest in the business to the extent of being able to operate that business without disturbance from anyone else, or of being the owner of an enterprise which the driver could sell or give away. (*Legal Process Service, Inc. v. Ward* (1988), 165 Ill. App. 3d 83, 518 N.E.2d 768.) The alleged independent business of the chauffeurs was under the complete control of O'Hare-Midway and had no assets, as O'Hare-Midway provided both the cars and the customers to the drivers. In fact, the operations manager for O'Hare-Midway testified

---

[2]O'Hare-Midway also argues that the Board of Review's determination as to the amount of Wallon's wages and the reasons for his separation were incorrect. Since these issues were not raised during the administrative proceedings, they have been effectively waived for review.

that he would not have purchased Wallon's "company" because it had no assets.

For the abovementioned reasons, we find that Wallon and Baker were not independent contractors and that their chauffeur services constituted covered employment under the Illinois Unemployment Insurance Act. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

MURRAY and GORDON, JJ., concur.